ANNA SCHROEDER vs. EDWARD D. TOMLINSON.

Third Judicial District, New Haven, Jan. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

To a complaint issued and dated March 27th, 1897, a summons signed by a justice of the peace was annexed, dated *October 27th, 1897*, commanding the defendant to appear and answer on the 3d day of April, 1897. *Held* that the action was not abateable by reason of the error in the date of the summons.

In an action of summary process to recover leased premises because of a subletting by the tenant, the complaint failed to aver that such subletting was without the written consent of the lessor or his assigns, as provided in the lease. *Held* that the omission was a defect of form and not of substance.

Proceedings for taking land upon execution are *stricti juris*, and no title passes unless the statute is exactly pursued.

The title of an execution creditor in the land of his debtor is not perfected, as against third persons, until the execution proceedings have been returned and recorded in the land records, as required

by General Statutes, § 1184. And although the creditor's title, when duly perfected, ordinarily relates back to the first step in the process, this legal fiction will not be permitted to work injustice to a *bona fide* purchaser of land whose deed is recorded during the pendency of the execution proceedings.

The levy of an execution upon land, in respect to the rights acquired by the creditor, does not speak from its date in the same manner as a levy of attachment.

A life tenant cannot acquire title to the premises by adverse possession, against the owner of the reversion, since his occupancy is justified under his paramount title.

Under our statute (§ 1358) the grantee of leased premises succeeds to the lessor's remedy of summary process for a forfeiture of the lease.

[Argued January 21st—decided February 8th, 1898.]

WRIT of error to reverse the judgment of a justice of the peace in an action of summary process, brought to the Court of Common Pleas in New Haven County and reserved by that court, upon an agreed statement of facts, for the consideration and advice of this court. *No error.*

The complaint, after reciting a lease from Theodore King to the plaintiff in error, in 1869, for her life, for a residence only for herself, she covenanting not to assign the lease or underlet or otherwise dispose of all or any part of the premises without his written permission, and that if she should the lease should thereupon expire, and summary process lie to repossess the lessor, without any re-entry, alleged that in 1892 she did underlet to parties unknown to the defendant in error; that in 1896 she leased the premises to another party, who was now in possession; that in 1870 she married and lived on the premises with her husband until 1885, when he died; and that in 1871 the lessor conveyed the reversion to the defendant in error, who now owned it.

The summons annexed to the complaint was dated October 27th, 1897, and required the plaintiff in error to appear before the justice on April 3d, 1897. She appeared and pleaded in abatement that he had no authority to issue the summons so dated. This plea was overruled and she then answered, and the cause was finally tried before a jury. The bill of exceptions showed that she requested the justice to give

certain instructions to the jury which were refused, and a verdict was rendered against her, followed by a judgment of dispossession. She then brought a writ of error to the Court of Common Pleas, and the parties there stipulated as to the essential facts, which are sufficiently stated in the opinion.

*John Elliott*, for the plaintiff.

The levy of execution on March 30th, 1872, was valid. Gen. Stats. §§ 1182, 1184; *Quinnebaug Bk.* v. *French*, 17 Conn. 135. The true title of real estate must appear of record, to be valid against others than the grantor and his heirs; *French* v. *Gray*, 2 Conn. 109; *North* v. *Belden*, 13 id. 380; *Hart* v. *Chalker*, 14 id. 79; *Smith* v. *Vincent*, 15 id. 14; *Bush* v. *Golden*, 17 id. 601; therefore, so far as the creditors were concerned, the true title to the property was in the record owner, King. *Barnum* v. *Landon*, 25 Conn. 149. The appraisal was properly made. *Scripture* v. *Johnson*, 3 Conn. 213; *Hobart* v. *Frisbie*, 5 id. 594. The appraisers are to appraise the value of the debtor's interest taken, not the value of the land. *Beers* v. *Botsford*, 13 Conn. 151. Upon recording the execution the creditor's title relates back to the date of the levy, and no intermediate conveyance by the debtor can defeat the execution title. Gen. Stats. § 1184; *Kellogg* v. *Wadhams*, 9 Conn. 208; 20 Amer. & Eng. Ency. of Law, 727, *n.* 4, and cases cited; *Coe* v. *Stow*, 8 Conn. 438. The Tomlinson deed could be valid against creditors only from the date of record, April 1st, 1872. Gen. Stats. § 2961; *Barnum* v. *Landon*, 25 Conn. 149; Tied. on Real Prop. 817 *a;* *Smith* v *Starkweather*, 2 Day, 207, 210; *Davenport* v. *Lacon*, 17 Conn. 283.

*V. Munger*, for the defendant.

Tomlinson is entitled to judgment by virtue of his deed from King. That deed was dated Jan. 10th, 1872, and was recorded April 1st, 1872. The execution was not recorded till April 3d, 1872. On that day the record title stood in Tomlinson. The plaintiff in error, however, insists that because the levy was made March 30th, 1872, that the title re-

lates back to that date. This court has decided otherwise. *Coe* v. *Stow*, 8 Conn. 536. A title derived by an execution levy must conform in all respects to the statute. The execution must not only be recorded in the town clerk's office, but must be returned to the court from whence it issued. This was not done until April 12th, 1872. *Kellogg* v. *Wadhams*, 9 Conn. 201. Mrs. Schroeder obtained nothing by her execution levy. At that time she had a life estate in the premises. Assuming that King had a title that was subject to a levy, it was encumbered by the life estate. In setting off King's interest by the levy, that life estate should have been appraised. This was decided in the case of *Fish* v. *Sawyer*, 11 Conn. 545. The plaintiff in error cannot assert a title acquired by adverse possession. She cannot claim adversely against a remainder man, until the termination of the life estate. *Chandler* v. *Phillips*, 1 Root, 547; 1 Amer. & Eng. Ency. of Law, 237; *Fleming* v. *Burnham*, 100 N. Y. 1; *Stephens* v. *Winthrop*, 1 Pick. 318. The plea in abatement was properly overruled. The date of the writ was a clerical error. The plaintiff was not misled by it. The court, the parties and the cause of action were fully understood.

BALDWIN, J. The original action was not abateable by reason of the error in the date of the summons. General Statutes, § 1000.

It is claimed that the complaint was insufficient for want of an allegation that the underletting by the plaintiff in error was without the written consent of the lessor or his assigns, and that this omission was reached by a demurrer interposed before the justice of the peace, to the second reply to the second defense, on the principle that a demurrer searches the whole record and attaches ultimately to the first substantial defect. The second reply set up an assignment of the reversion in 1872, by deed pursuant to a previous contract recorded in 1871, to the defendant in error; and the second defense was rested on a title in the plaintiff in error by levy of execution on the interest of the lessor, prior to the record of such deed. Under our statutory rule that all demurrers shall

distinctly specify the reasons why the pleading demurred to is insufficient, it is, to say the least, doubtful whether a demurrer to a reply for one cause can ever call for a judgment that the complaint is insufficient for another cause. In the case at bar, however, the defect in the complaint was one of form, not substance. It was a defective statement of title, but not a statement of a defective title. Even at common law, therefore, it would not have been reached by the demurrer in question.

The substantial controversy between the parties was as to the present ownership of the reversion. The plaintiff in error, Mrs. Schroeder, received the life lease recited in the complaint from her son Theodore King, in 1869. Upon her marriage in 1870, he brought an action of summary process against her, on the ground that the marriage, and the occupation of the premises by her husband with her, worked a forfeiture; and recovered judgment. She brought a writ of error to the Court of Common Pleas and prevailed. Pending a motion in error to this court, which was afterwards decided against him (*Schroeder* v. *King*, 38 Conn. 78), he sold and conveyed to Tomlinson, the present defendant in error, a lot adjoining the demised premises, and on the same day made a written contract with him, stating that in consideration of such purchase, and " the further consideration of the taxable costs and counsel fees incurred and to be incurred in a suit now pending for the recovery of the possession of the premises hereinafter described, which the said Edward D. Tomlinson hereby agrees to pay as a part consideration of the purchase of said premises, the said Theodore has agreed and does hereby agree that upon the termination of said suit and the payment of the taxable costs and counsel fees as aforesaid, or at any time before said termination, at the election of the said Edward D. Tomlinson, and upon his, the said Tomlinson's, paying the costs and counsel fees in said suit up to the date when he, the said Edward D. Tomlinson, may choose to accept a conveyance of the premises as hereinafter described, and pay said costs and fees as above, he the said Theodore King will execute and deliver to the said Edward

Schroeder *v.* Tomlinson.

D. Tomlinson a quitclaim deed conveying all his present interest in" the premises then occupied by his mother under her lease. Tomlinson also signed this contract, agreeing "to accept said deed and conveyance of said premises, and pay said taxable costs and counsel fees in the manner above specified." It was executed, attested, and acknowledged on January 5th, 1871, in the same manner as a deed of land, and recorded in the land records of the town where the premises were situated, on January 18th.

Subsequently, upon the affirmance of the judgment in favor of Mrs. Schroeder, she took out an execution upon it, and on March 30th, 1872, the officer levied it on King's interest in the demised premises. His return stated that he levied upon the land and the debtor's interest therein, said land being subject to the incumbrance of a lease to Mrs. Schroeder during her life; that certain appraisers were duly appointed, one by the creditor and two by a proper magistrate, to appraise said land with the incumbrances thereon; that after viewing it, "and ascertaining in view of the incumbrances thereon," they appraised "the equity, right and interest of said debtor in said premises, subject to the life lease of Anna Schroeder, at the sum of thirty dollars," and delivered to him a certificate of such valuation, which was annexed; and that on said day he set off to her the whole of said land in part satisfaction of the execution. Appended to the return was the magistrate's certificate that he had appointed two appraisers, who were named, to act with the appraiser named by Mrs. Schroeder in appraising the value of the land and the debtor's interest therein, subject to her life lease, and that all three had been duly sworn before him. Then followed the certificate of the appraisers, which stated that they "having been appointed and sworn, as above specified, to appraise the above piece of land to be set off on said execution, did appraise the same at the sum of thirty dollars."

On January 10th, 1872, King had conveyed the demised premises to Tomlinson, by a quitclaim deed of that date, purporting to be given in pursuance of their contract on record, and on April 1st Tomlinson lodged this deed for

record.   On April 3d the officer caused the execution and his return thereon to be recorded in the land records, and on April 12th returned it to the office of the clerk of the court whence it issued.

Prior to March 30th, Mrs. Schroeder had no notice of any claim of ownership by Tomlinson, except so far as General Statutes, § 2964, might make the record of his contract with King "notice to all the world of the equitable interest thus created." Ever since that date she has claimed and exercised absolute ownership over the land and has expended large sums in improvements upon it, under the belief that she was the sole owner. In 1892 she underlet it to tenants who have since been in possession under her. Tomlinson never paid her anything upon her judgment for costs against King. He has ever since the record of his deed on April 1st, 1872, claimed to own the land, subject to the life estate of Mrs. Schroeder, nor did he ever have knowledge that she claimed anything under her levy of execution, but always supposed her occupancy and claim to be solely under her lease.

Our statutes provide that all executions duly levied on land, and returned and recorded, shall vest all the title of the debtor in the creditor, and his heirs and assigns. General Statutes, § 1184. The parties are at issue on two questions: first as to whether the execution was duly levied; and second, as to whether the proceedings under it were affected by the record of Tomlinson's deed on April 1st.

The objection to the validity of the levy is that the appraisal was not of the value of the debtor's interest in the land, that is, of the reversion, but of the land itself. The terms of the appraisers' certificate support this contention, and unless it can be controlled by their reference to the oath which they had taken to appraise it subject to the lease, the legal basis for setting it off at thirty dollars is wanting. Such proceedings are *stricti juris*, and no title passes unless the statute is exactly pursued. *Fish* v. *Sawyer*, 11 Conn. 545. We find it, however, unnecessary to decide this question.

At the date of the levy, King owned the legal title to the

reversion in the demised premises, so far as concerned Mrs.
Schroeder.   Tomlinson had acquired this title more than two
months before, but by a conveyance which was ineffectual,
except as to King and his heirs, unless recorded.   General
Statutes, § 2961.   The same policy, however, which demands
the record of a deed, has dictated a similar requirement in
case of a levy of execution.   A levy on land followed by a
set-off occupies the place and serves the purpose of a con-
veyance.   Standing alone, it is not even an inchoate transfer
of title, except as against the judgment debtor and those
identified in position with him.   The execution creditor
must not only see that due return is made to court, but, like
a grantee by deed, must place that under which he claims
on record within a reasonable time; and any delay is at the
risk of being postponed by a prior record of some other evi-
dence of title, derived from the execution debtor by another.
He is held to stricter obligations in this particular than the
holder of an ordinary conveyance, since the levy is inopera-
tive to effect a transfer of title, even against the judgment
debtor, unless, and until, the proceedings are recorded, and
recorded within the life of the execution.   *Coe* v. *Stow*, 8
Conn. 536.   It is true that under a levy duly perfected the
title of the creditor commonly relates back to the first step
in the process; but this legal fiction is never permitted to
work injustice to a *bona fide* purchaser, in whom any rights
may have meanwhile become vested.   Tomlinson stood in
such a position.   He purchased the reversion, and took a
proper conveyance of it, more than two months previous to
the levy, in pursuance of a contract made and recorded nearly
a year before.   His deed was a quitclaim, but this, under the
principles of our system of conveyancing, does not make his
rights any less than if it had contained full covenants of
warranty.   *Robinson* v. *Clapp*, 65 Conn. 365, 382.   By the
contract of January, 1871, he was bound to accept it when-
ever tendered after the termination of the suit between King
and his mother, and thereupon, as part of the consideration
of the conveyance, to pay " the taxable costs and counsel
fees incurred" in that action.   The other part of the consid-

eration he had previously discharged by purchasing of King the adjoining lot for $1,500. The costs and fees, described in the contract, were evidently those which might be due from King; and Tomlinson's duty was to pay the money necessary to satisfy them to King, to enable him to discharge his obligations to his creditors. The quitclaim deed was given after the end of the suit mentioned in the contract, and the consideration clause recites a payment of $200, which there is nothing in the record to contradict. Tomlinson acquired title, therefore, as a *bona fide* purchaser, and while he failed to record his deed within a reasonable time, this did not impair his right to perfect his title by a subsequent record, except as against some other purchaser of greater diligence. It was recorded on April 1st, two days before the record of the proceedings upon the execution. This priority of record, had his deed been taken after the commencement of the levy, would *prima facie* have given him priority of title, to be defeated only by proof that he was guilty of fraud or that which is equitably equivalent to fraud. *Wheaton* v. *Dyer*, 15 Conn. 307 ; *Bush* v. *Golden*, 17 id. 594, 602. Much more is he entitled to insist on priority, when his conveyance long preceded the levy.

Knowledge of the existence of an unrecorded deed may be a sufficient ground for the imputation of constructive fraud to a subsequent purchaser. *Hamilton* v. *Nutt*, 34 Conn. 501. No such knowledge, as respects the levy of execution, is charged against Tomlinson.

The question is not the same which would arise if the property had been under attachment upon *mesne* process in favor of Mrs. Schroeder, when he placed his deed on record.

The levy of an execution upon land, in respect to the rights acquired by the creditor, differs essentially from the levy of an attachment. The object of the latter process is to impose a lien ; that of the former to transfer an estate. The first step in attaching land is to make an entry of the proceeding upon the land records ; in setting land off on execution, the entry there is one of the last steps. When Tomlinson's deed was lodged with the town clerk, there was

nothing on the land records to indicate that a levy had been begun.　There was, therefore, neither knowledge nor notice; and it is unnecessary to inquire whether, had he had knowledge, the record of his deed would have been too late.

No title by adverse possession could be acquired by Mrs. Schroeder, subsequent to her levy, against the owner of the reversion, since her occupancy was justified under a paramount title, that is, the lease.

Her subletting, without his consent, was a cause of forfeiture, of which the defendant in error had a right to take advantage by the action of summary process.　General Statutes, § 1358.

The rulings of the justice of the peace in the course of the trial have ceased to be material by reason of amendments of the pleadings before him made by mutual consent, and the stipulation filed in the Court of Common Pleas, upon which the case was reserved for our consideration.　The verdict and judgment are supported by the agreed facts, and the cause was properly disposed of upon its merits.

The Court of Common Pleas is advised that there is no error.

In this opinion the other judges concurred.