HANNAH S. CURTIS et al., executors of William H. Curtis, deceased,

*v.*

RENA P. CROSSLEY et al.

[Filed March 14th, 1900.]

1. Where a married woman sought to set aside a conveyance to her husband, though it was solely for his benefit, it was not incumbent on him to show that it was reasonable or fair, but the burden of proof was on her to show that it was secured by improper influence.

2. A settlement by a wife and her husband which was unreasonable in amount, and which was made without individual counsel for the wife and at a time when she stated to others that she was about to make it under the influence of threats of her husband, the making of which threats was corroborated by other evidence, will be set aside as obtained by undue and improper influence.

On bill, answer and cross-bill, &c., and oral proofs.

*Mr. John R. Hardin,* for the complainants.

*Mr. Chandler W. Riker,* for the defendant Rena P. Crossley.

*Mr. Washington B. Williams,* for the infant defendants.

EMERY, V. C.

The questions in this case relate to the operation and to the validity of a deed of trust executed by a married woman, Mrs. Rena P. Crossley, to William H. Curtis, now deceased. The

deed of trust, executed under Mrs. Crossley's seal, assigned and transferred to William H. Curtis the stock standing in the grantor's name on the books of four corporations and authorized the trustee to transfer the same on the books, the stock to be held in trust (with power to sell and change investments) and to pay the dividends and income to the grantor during her life, and on her death to assign and convey to her husband absolutely. If the husband did not survive the grantor, the interest and income were, after the death of the grantor, to be paid to Annie Crossley, a sister of the husband, during her life, and on her death to the survivors of four nephews of the husband, James Crossley Neilson, James George Rowan, James Crossley and Thomas Crossley. The deed of trust was dated and executed on December 13th, 1894, and was actually delivered into the hands of Mr. Curtis on the day after its date, and at the same time the certificates of stock of all the companies were also actually delivered to him, but only one of the certificates was endorsed or assigned on the back of the certificate. Mr. Curtis died on February 18th, 1895, and did not, previous to his death, have any of the stock transferred to himself on the books. The deed of trust and certificates were not among the private papers of Mr. Curtis which came to the hands of the executors, but after his receipt of them the deed and certificates, all within an envelope, remained in the vault of the bank, of which he was president, up to the time of his death, and the executors did not learn of the existence of the deed of trust or of the testator's possession of the deed or securities until February, 1897, when a demand or request for them was made on behalf of Mrs. Crossley. Complainants, after receiving this information and examining the deeds, took possession of the securities and deed by advice of their counsel and gave the corporations notice of their ownership of the stock under the trust deed and claimed payment to themselves of the dividends, which had, up to this time, been paid directly to Mrs. Crossley by the corporations. Two of the corporations assigned the stock to complainants' names, in compliance with this demand, and one of them refused to so do. Thomas B. Crossley, the husband,

died on December 8th, 1896, and Anne Crossley, his sister, died before that date and after the execution of the deed of trust. The four nephews named as remaindermen are all living and are defendants to this suit, three of them being infants. The adult nephew has not filed an answer, and as to him the hearing has proceeded on decree *pro confesso.*

The bill is filed by the executrices of the trustee to settle the accounts of their testator and themselves as trustees under the deed, and to be relieved from the trust, the complainants being unwilling to undertake its further execution.

By the answer and cross-bill of the defendant Mrs. Crossley, two defences are raised—*first,* that the trusts in the deed were never accepted or assumed by Mr. Curtis; and *second,* that the deed is illegal and void and should be set aside. The grounds alleged are—*first,* that it was executed under the misrepresentation that it was a will and was revocable; *second,* that it was executed under undue influence of her husband, especially under the influence of threats of his suicide; *third,* that she had no independent advice or counsel before the execution of the paper; and *lastly,* that the deed contained no power of revocation.

The cross-bill prays that the deed be declared void, and that the securities in complainants' hands be delivered up to her. The infants have filed formal answers, but have been fully represented by counsel on the hearing.

So far as relates to the question of fact involved in the cause, I reach the conclusion, *first,* that the deed of trust was executed and delivered to Mr. Curtis and that he accepted the trust. No evidence has been offered by the defendants, or appears in the case, which is sufficient to overcome the effect of the actual receipt and retention within his control, of the deed itself and of the securities by the grantee named in the deed, corroborated by the evidence of Mr. Taylor, who delivered the deed and securities to Mr. Curtis, and the evidence of Mr. Curtis, then the cashier of the bank, as to the declarations and actions of Mr. Curtis relating to his acceptance of the trust. Giving to the evidence produced by defendant upon this point its utmost effect, it goes no further than to show that Mr. Curtis, after he had accepted

the deed and securities and had declared his acceptance of the trust, refrained from having the certificates of stock formally assigned to his name, because of information he received which cast some doubt upon the propriety or legality of the transaction. But as he retained the deed and securities after this information and until his illness in January, 1895, without any communication to the grantor or any of the parties interested, there is no basis for relieving him or his estate from the responsibilities and duties incurred under a trust which has been actually accepted. As to the failure to endorse the certificates of stock the evidence shows that Mrs. Crossley intentionally withheld her endorsement of the certificates (except as to the one certificate which had been previously endorsed by her in blank), and that she expected or hoped by this omission, either to retain some hold on the stock or affect Mr. Curtis' willingness to accept the trust or his transfer of the stock to his own name. This omission was by the advice of Judge Fort, who was called on before the signing to advise her as a friend about signing the deed, and the advice was given, because Mrs. Crossley's statements and conduct during that interview were such as to show that the execution of the deed was not or might not have been voluntary on Mrs. Crossley's part, but under fear or undue influence on the part of her husband. But without the communication of this situation of duress, if it existed, to any one else connected with the execution of the deed, Mrs. Crossley executed and acknowledged the deed, after the usual form, declaring to Mr. Taylor, who took the acknowledgment, that it was her voluntary act, without any fear, threats or compulsion of her husband, and she had further made the same statement to Mr. Taylor, on special inquiries he had made. An excuse was made for not endorsing the certificates and the certificates themselves were delivered to Mr. Taylor at the time, for the purpose of handing to Mr. Curtis with the deed. This secret intention of the grantor not to endorse the certificates evidently did not prevent the operation of the deed, as vesting the title in the securities in the trustee, if the actual endorsement of the certificates themselves was not necessary for this purpose. That such endorsement of the cer-

tificates is not necessary to pass the title where a deed has been executed assigning the stock and authorizing the transfer on the books, is settled. *Lowell Transfer Stock* ¶ *44; Grymes* v. *Hone, 49 N. Y. 17, 22 (1872)*. The authorities cited by me in *Tarbox* v. *Grant, 11 Dick. Ch. Rep. 199* (at *p. 204*), show further that the gift or trust would probably have been complete by the delivery of the deed assigning the stock without the delivery of the certificates themselves.

In the *second* place, I reach the conclusion that Mrs. Crossley has failed to establish that she signed the deed in question under the belief that it was a will. I conclude, on the contrary, that the evidence of the two counsellors-at-law, with whom she had interviews relating to the deed, shows satisfactorily that she knew the paper she was executing purported to be an irrevocable deed and was not a will. From the advice to decline endorsing the certificate, Mrs. Crossley may have got the notion that the operation of the trust deed was in some way still under her control, and she may also have received from Judge Fort the further idea that, under the circumstances which she stated to him, the enforcement of the trusts by the courts was doubtful, but I am satisfied that this was the extent of the advice or information communicated to her, at or before the execution of the deed, as to her control over the property after its execution, and that she then knew from both gentlemen that the deed itself purported to be and was an irrevocable deed and was not a paper or will which she could revoke. Mrs. Crossley's evidence is the sole basis for the claim that it was executed under the representation that it was a will, and upon this point, and generally as to what took place at the time of the execution, her present memory or statement is unreliable. Conclusive evidence of this unreliability appears in the fact that she now says that she did not disclose at all to Judge Fort the threats her husband had made, but kept these to herself, while it is entirely clear from his evidence that she did so, and that in consequence of these disclosures Judge Fort declined to have anything to do with the transaction as a witness.

*Third,* I conclude upon the entire evidence that the deed was

executed through fear of her husband and undue influence on his part. The evidence of Judge Fort, who was called in to see Mrs. Crossley, not as her counsel, but as a friend, just previous to the execution of the paper, and who was present at its execution, shows that at that time Mrs. Crossley was nervous and excited, and seemed, from her own account, to be then under the influence of a fear that her husband would kill himself if she did not sign the paper, and also in fear of her own life. As the result of an interview of twenty minutes' duration, during which he tried to quiet her, he said he was not willing to advise her to sign the paper, and further told her that under the circumstances he didn't believe it would be of any force if she did, but she must do what she thought she ought to do about it. After the interview Mrs. Crossley and Judge Fort went together to the room where the paper was executed in the presence of Mr. Crossley and Mr. Taylor, but nothing was said to either of them about the communication of the husband's threats. Judge Fort, when requested to witness the deed, declined to do so, and he also declined to witness a will of Mr. Crossley's, which was executed at the same time. He had never been employed as Mrs. Crossley's counsel, was not so employed at this time, and did not understand that he had been called in except for advice as a friend and neighbor of Mrs. Crossley's and of her family.

Mrs. Crossley's statements to Judge Fort as to her husband's threats and their influence over her, with respect to the signing of the deed, are corroborated by her own evidence and by the evidence of several witnesses. Mrs. Crossley's sister, who lived with Mr. and Mrs. Crossley at the time, says that shortly before December 14th, 1894, she overheard a conversation between them, in which Mr. Crossley said he would kill himself if Mrs. Crossley didn't sign a will and provide for him liberally, and that after the conversation Mrs. Crossley told her about it, that she didn't want to sign the will, and that she was very much afraid he would take his life. Mrs. Lyon, her aunt, also proves Mrs. Crossley's complaints to her of her husband's threats to kill himself if she didn't sign a paper, and her fears. Other evidence as to Mr. Crossley's disposition and habits also tends

to show the truth of Mrs. Crossley's statements to Judge Fort, and upon the entire evidence I reach the conclusion that the deed must be declared void, as procured by undue influence of the husband.

It is insisted by counsel for the infants that the settlement upon the husband was only a reasonable provision for him out of his wife's large estate, and that by this settlement the husband received only a moderate amount beyond the provisions for him under previous wills and much less than he would have received on the wife's death intestate. But the contention cannot avail to sustain the settlement as reasonable because, first, the present settlement is, for all that appears, additional to the provisions for the husband in any of the previous wills, and left him free to claim under any future wills; second, the irrevocability of the settlement was the real imposition on the wife in this case. While the husband, if he survived the wife, received the settled property absolutely, the wife, as survivor, received only the income, and, no matter what change in circumstances occurred, was without power to touch the principal for her own use or to divest it from those relatives of her husband who were nominated by him in the settlement, and who were, with one exception, unknown to the wife. The trusts of the settlement, in practical effect, were an absolute conveyance of the settled property to the husband, subject to the life estate of the wife and a disposition of the property by a will of the husband in case he died before he received the absolute property for his sole benefit, which will of the husband was part of the settlement. If the reasonableness of the provision were the test of the validity I should not uphold the settlement as reasonable because of the omission of the power of revocation in case the wife survived the husband. But settlements by a wife upon the husband are not made dependent for validity on their reasonableness or upon the absence of influence upon the husband's part, and the reasonableness or unreasonableness of the settlement is only a circumstance to be considered on the vital question whether the deed was executed under undue or improper influence of the husband. The law recognizes and sustains the right of a hus-

band to the use of all proper influence over the wife, even for his own benefit, and does not impose upon him or those claiming under him, who seek to uphold her settlement, the burden of showing that the settlement is fair or reasonable or was made under independent advice, as in the case of settlements made in the other relations, which are called confidential or fiduciary. But the wife is protected against settlements made upon the husband through fear or improper influence on his part, and if she is able to establish this the settlement will be declared void. And while a court of equity will scrutinize the transaction with jealousy, in order to ascertain whether the settlement was made through fear of the husband or whether the husband exercised improper influence over the wife, the burden is on the wife to show improper influence of the husband, in order to avoid her settlement on him. *2 Lead. Cas. Eq. (4th ed.) 1215, 1216* (notes to *Hugenin* v. *Baseley*); *Grigby* v. *Cox, 1 Ves. Sr. 518 (Lord Hardwicke, 1750)*; *Nedby* v. *Nedby, 21 L. J. (N. S.) 446 (Vice-Chancellor Parker, 1852)*.

The unreasonableness of the settlement, the lack of independent counsel for the wife and the omission of the power of revocation are therefore only circumstances to be considered upon the vital question of improper influence exerted by the husband to bring about the settlement on him and his relatives. As to this question I conclude, upon consideration of these and all the other circumstances of the case bearing upon the question, that the wife has proved that the settlement was brought about by the use of undue and improper influence on the part of the husband, and the deed of settlement must therefore be declared void. A decree will be advised setting aside the deed and directing that complainants settle their accounts as trustees and transfer the securities to Mrs. Crossley, the form of decree to be settled on notice unless agreed on.