Charles F. Claiborne, Judge.

G. Peraino,
Appellant

vs

Octave C. Plauche

No. 8098

February 7th, 1921.

G. Peraino,
     Appellant

vs                                                          No. 8098

Octave C. Plauche

          Appeal from Civil District Court, Hon. Fred D.
King, Judge.

               CHARLES F.CLAIBORNE, JUDGE.

          This is a suit for possession by a landlord against
a tenant.  The suit was filed November 17th, 1920.

          The plaintiff alleges that by an act under private
signature he leased to the defendant a certain store for the
term of twenty-four months beginning November 1st, 1918 and
ending October 31st, 1920; that by the terms of said lease
the lessor granted to the lessee the privilege of renewing
said lease for a period of two years, provided the lessee
notified the lessor in writing before October 1st, 1920 of
his intention to renew said lease; that said lessee has never
notified the lessor of his intention to renew; that the lease
has expired, and plaintiff is entitled to the possession of
his premises.

          The defendant admits the lease, and his privilege of
renewing the same, and his obligation to notify the plaintiff
of his intention to renew the same; but he denies that he fail-
ed to give said notice; he avers, on the contrary, that on
September 6th, 1920 he gave the plaintiff a written notice of
his intention to renew the lease.  He prayed for judgment dis-
missing plaintiff's suit, recognizing his rights under the
lease, and compelling plaintiff to execute in his favor a lease
in accordance with his contract.

          The Judge of the District Court found that the notice
had been given and the lease renewed, and dismissed the suit.
The plaintiff has appealed.

          The clauses in the lease pertinent to the questions
presented are as follows:

               "The lessee agrees to notify the lessor or his
          agent in writing on or before the first day of Octo-

647

ber 1920 whether or not he wishes to retain the premises for one or more years from the expiration of this lease. The lessor hereby grants to the lessee the privilege of renewing this lease at its expiration for a period of two years under the same conditions, stipulations, and rental as are herein stated".

The lease is signed "Joseph Peraino by Philip Peraino", in the hand of one with little knowledge or habit of writing.

The defendant testified that when plaintiff's son, Peter, came to collect the rent, he (defendant) handed him a sealed envelope addressed to the plaintiff, and containing the following notice:

"New Orleans, La., Sept. 4th, 1920.

Jos. Perino, Esq.

Dear Sir, This is to notify you that my Lease on store and Residence No.523-525 St. Maurice Ave. Expires on October 31st, 1920 which allows me the Privelidge of Two more years which I wish to be renewed on same terms & conditions you will kindly have Papers ready to be signed at your Eerliest conveniance":

Yours Resp

"Signed"        Chas.Pluche"

Just after he had given it, the son Peter went home and came back in ten minutes and threw the notice on the show case and told him that his father said that he did not want this; that there was plenty of time to act on this; he (defendant) told him it was a notice to his father that he wanted to renew the lease; the plaintiff resided next door to the defendant.

Two disinterested witnesses corrobarate the defendant's testimony. One of the witnesses remembers the date, September 6th, because it was "Labor Day"; the other read the notice returned by Peter.

The plaintiff denies having received any letter or notice; but he can neither read nor write, nor speak English.

Peter Peraino, twenty-four years old, son of plaintiff, collected his father's rent for September and October; defendant called him over to get it; he does not know how to read or write,

and does not know the months; the defendant did not give him any papers, or letter, or envelope, and he did not bring back any to him; nor did he bring back any message to him from his father; when the defendant paid him the rent, he brought it to his father.

Josephine Peraino, sixteen years old, a daughter of plaintiff testifies that she knows how to read; if her father received a letter she would read it; she got no letters to her father to read; she never saw this notice before.

John Peraino, nineteen years old, a son of plaintiff; when a letter is received by his father either he or his sister reads it; he never saw this notice before.

The testimony of the defendant and his two disinterested witnesses that the notice was sent must prevail over that of the defendant and of his son, Peter. According to a long established rule, the trial judge saw the witnesses and heard their testimony. His long experience carries great weight with his judgment. This Court will take judicial cognizance, besides, that, on or about September and October 1920, rents had increased in price very much, and that it was in the interest of lessors to terminate leases. But the jurisprudence is with the Judge. In the case of Widow de St. Romes vs Carondelet Canal, 24 A., 331, the negative testimony of the plaintiff and of her two sons was considered insufficient to destroy the affirmative testimony as to the service of a citation.

In the case of Singer vs Carondelet Canal, 39 A., 484, the Court said:

"He (defendant) denies having received the letter, but a witness swears positively that he handed it to him, and we are inclined to believe his statement, as he is without interest in the suit".

See also 13 La,, 412; 51 A., 1048; 141 La., 132; 34 A., 8; 23 A., 501.

Plaintiff argues however that the notice, even if given, was without effect, because it was served on September 6th, a legal holiday under Act 121 of 1920 p 173. There is no article in the Civil Code, nor in the Revised Statutes, nor any law

which makes it illegal for any party to notify another that
he accepts an offer to make a contract, or to make the contract
itself, on any legal holiday.  Article 207 of the Code of Prac-
tice applies to judicial proceedings exclusively.  It says:

"No citation can issue, no demand can be made, no pro-
ceeding had, nor suits instituted on Sundays &c ".

When the question of the validity of judicial adver-
tisements of sales on Sundays was raised in Schenck vs Schenck,
52 A., 2105, the Supreme Court said:

"To make such advertisement on Sunday unlawful the
law must expressly so declare.  It has not done so".

We have an expression of opinion upon that subject
from our Supreme Court in the case of Keller vs Mc Calop, 12 R.,
642.  The Court said:

"In support of the objection that the will was execut-
ed on a Sunday, Art. 207 of the Code of Practice, has
been relied on.  It provides that, on that day, and
certain others therein named, no citation can issue,
no demand can be made, no proceeding can be had, nor
suit instituted &c".

This enactment relates, in our opinion, only to judicial pro-
ceedings; but it does not, we apprehend, prevent a citizen from
marrying, or making any other contract on those days.

In support of his objection plaintiff refers to the
cases in 71 S. E., 678; 200 Mass., 514.  As was said in Schenck
vs Schenck, 52 A., 2105:

"Certain cases in other jurisdictions have been cited
as sustaining a contrary view to that taken herein.
But they are found to rest upon the terms and con-
struction of local statutes";

prohibiting certain acts on Sundays.

As the notice given in this case does not partake of
the character of a "judicial proceeding" we are bound to hold
that the service of it on a legal holiday was valid.

The plaintiff is correct in his position that this
Court cannot compel him to execute and sign a lease to the de-
fendant.  C. C., 1926 (1920), 1927 (1921); 114 La., 365; 134

La., 708; 49 A., 872; 46 A., 903; 124 La., 869; 122 La., 851; 48 A., 1414; 46 A., 712; 35 A., 1126.

In the case of Citizens Bank vs James, 26 La., 264, the defendant had promised to buy from the plaintiff a certain plantation upon payment of a certain amount cash and the balance in the stock note of the defendant. The plaintiff prayed for judgment for a specific amount and that defendant be condemned to accept the sale of the property and to furnish his stock note. The Court held that the defendant could not be forced to a specific performance of those obligations; that the remedy was in damages.

In 48 A., 13, Laroussini vs Worlein, the Court held that plaintiff, lessor, could not ask that the defendant, lessee, be compelled to sign a contract of lease and notes; that he could ask only for damages.

In Mirandona vs Burg, 49 A., 353, the defendant had agreed to sell to the plaintiff the contents of a grocery store, at a price to be fixed by two appraisers to be selected by the parties; the defendant to lease the property to the plaintiff for five years, with the privilege of buying it at an appraised value. Plaintiff sued for specific performance. The Court held that it could not compel the physical performance of those acts by the defendant, and dismissed the suit.

But the relief asked by defendant in the case under consideration is not one for specific performance. The defendant avers that he had the privilege of renewing a contract of lease already consummated; that he exercised that privilege; and that plaintiff was attempting to violate the contract by this suit to evict him. This Court has the undoubted right to protect the defendant in his rights and to prevent the plaintiff from violating them. C. P., 296. While this Court may not compel the plaintiff to execute and sign a contract of lease, it may decree that a lease does exist between him and the defendant by virtue of which plaintiff has no right to evict him from the leased premises.

· The contention of plaintiff that defendant's notice expressed only a "wish" to renew, and not a positive "assent" to renew, does not deserve serious consideration. If it meant anything, it was to exercise this privilege of renewal under the lease.

judgment affirmed
February 7th, 1921