PENNSYLVANIA-DIXIE CEMENT CORPORATION *vs.* H. WALES LINES COMPANY.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 7th—decided April 3d, 1935.

*Cornelius J. Danaher,* for the appellant (defendant).

*W. Arthur Countryman, Jr.,* for the appellee (plaintiff).

BANKS, J. This was an action brought upon the common counts to recover the purchase price of cement alleged to have been sold and delivered by the plaintiff to the defendant. In a second special defense by way of counterclaim, the defendant alleged that for nearly thirty years it had been the sole distributor of Dexter and other cements in the New England states under a contract with the plaintiff and its predecessors in title, which contract the plaintiff had wrongfully cancelled on or about August 20th, 1932; that on or about that date the plaintiff entered into a combination and conspiracy with other cement companies in violation of the laws of the United States for the purpose of con-

trolling the trade in cement and preventing the defendant from purchasing or distributing cement in such states, that because of such conduct the business of the defendant as a distributor and dealer in cement was wholly destroyed, and claimed treble damages. The plaintiff demurred to this defense by way of counterclaim upon the ground that it was based upon a statute of the United States, jurisdiction to enforce which is by the terms of the statute solely in the District Court of the United States, and the defendant assigns error in the action of the trial court in sustaining this demurrer.

The counterclaim states a cause of action for the violation of the provisions of the anti-trust laws commonly known as the Sherman and Clayton Acts. The section of the statute under which the defendant claims treble damages reads as follows: "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U. S. C. A. § 15. The remedy here provided has been held to be one for which recovery can be had only in the federal courts. "The action is wholly statutory, and can only be brought in a District Court of the United States." *Blumenstock Brothers Advertising Agency* v. *Curtis Publishing Co.*, 252 U. S. 436, 440, 441, 40 Sup. Ct. 385; *D. E. Loewe & Co.* v. *Lawlor*, 130 Fed. 633, 634; *Hand* v. *Kansas City Southern Ry. Co.*, 55 Fed. (2d) 712, 713. In *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 32 Sup. Ct. 169, cited by the defendant, the question of jurisdiction involved was that arising

under the Federal Employers' Liability Act which provided that the jurisdiction of the federal courts under the act should be "concurrent with that of the courts of the several States." 45 U. S. C. A. § 56. If an act of Congress gives a penalty to the party aggrieved, without specifying a remedy for the enforcement, it may be enforced by an action in the state court. *Claflin* v. *Houseman,* 93 U. S. 130, 137. The anti-trust laws provide a specific remedy for their breach, and the trial court did not err in sustaining the demurrer to the counterclaim upon the ground that the cause of action there set forth was cognizable only in the federal courts.

The defendant also assigned as error the action of the trial court "in ruling and holding that the matter set forth in the second special defense could not be urged as a ground of defense" in this action. Both parties have assumed that, apart from the question of jurisdiction, the ruling upon the demurrer raised the question of whether the violation of the anti-trust laws alleged in this defense constituted a good defense to the cause of action set up in the complaint, the defendant claiming that upon the allegations of this defense the contract between the parties was illegal because of violation of the anti-trust laws, and the plaintiff that the contract upon which this action is brought was not one made in violation of the anti-trust laws but was collateral to the alleged conspiracy, and that there is nothing in the anti-trust acts which invalidates such a collateral contract or relieves the buyer from his obligations under it. The allegations of this second defense were pleaded, not as a defense, but "by way of counterclaim" and the only question raised by the demurrer to it is that already discussed. Whether these allegations constituted a good defense to the cause of action set up in the complaint was a question not pre-

sented by the demurrer, consequently was not passed upon by the trial court, and is not before us.

The remaining questions before us relate to the action of the court in sustaining the plaintiff's demurrer to the defendant's remonstrance to the report of the state referee.

The defendant remonstrated against the report upon the ground that: "The Referee has found the following facts without evidence, against evidence and upon improper evidence," followed by a recital of the facts found in twenty-two of the thirty paragraphs of the referee's report, constituting practically all of the material facts found by the referee. Such a wholesale attack upon the finding of a state referee violates good practice and awakens distrust as to the good faith of the claim made. *Gallaher* v. *Southern New England Telephone Co.*, 99 Conn. 282, 290, 121 Atl. 686. It is of course beyond the realm of probability that substantially all of the facts found by the referee were found without evidence. The language of the remonstrance makes it clear that such was not the real claim of the remonstrant. The allegation that the facts were found against evidence and upon improper evidence "fairly implies that there was evidence bearing upon the fact found, and that, in the view of the remonstrant, it supported his side of the question and did not support the other, and that the finding should have been the other way. It is another way of saying that the finding was contrary to the weight of the evidence." *Ferguson* v. *Cripps*, 87 Conn. 241, 245, 87 Atl. 792. Inasmuch as the trial court could not retry the issues, such allegation was not a proper ground of remonstrance. Practice Book, § 172.

The report of the state referee states that the parties were at issue upon two primary questions of fact: "(1) Was the defendant merely, as it claims, acting as

the agent of the plaintiff in the selling of cement, or was it acting for itself as a principal in the purchase of the cement; (2) what was the life of the agreement existing between them, and did the plaintiff improperly or unlawfully cancel such agreement." The following facts, relevant to these issues, appear from the referee's report: In 1915 the Dexter Portland Cement Company entered into an agreement with the defendant under which the latter, for a consideration of ten cents a barrel, agreed to act as distributor of its products under the terms and conditions of sale fixed by it, and receive invoices when shipments were made and to pay for such invoices, as rendered, at the price fixed by it. The agreement gave the defendant the exclusive right to sell such cement in the New England states. By its terms it was to run for a year, and could be terminated by the Dexter Company by giving in any year reasonable or two months notice.

In 1926 the Dexter Company, in connection with others, was purchased and absorbed by the plaintiff, and the same business relations, agreement and manner of doing business were continued by the plaintiff and the defendant. When an order was secured by the defendant it would send its own order to the plaintiff giving the name of the buyer to whom the cement was to be shipped, the shipment would be made by the plaintiff to such buyer, and an invoice sent to the defendant. In every case the charge for the cement shipped upon the orders sent by the defendant was made directly against it, and payment was made by it for all such orders except the items in the bill of particulars in this action. The defendant collected the amount due from the buyer for its own account, making no claim against the plaintiff for any loss sustained by the buyer's failure to pay. It admitted that, with the exception of certain sums due from the State,

it had received payment for all the items upon the plaintiff's bill of particulars, but it refused to pay for them because of its claim that the plaintiff had wrongfully cancelled the contract existing between them. On August 20th, 1932, the plaintiff notified the defendant that after October 31st, 1932, it would discontinue selling cement to it as a jobber.

The referee found as conclusions from these subordinate facts that all the sales of cement set forth in the plaintiff's bill of particulars were made directly to the defendant, that the plaintiff cancelled the agreement in accordance with its terms, and was entitled to recover for the cement sold to the defendant as set forth in its bill of particulars. These conclusions find ample support in the subordinate facts set forth in the referee's report, and the trial court properly overruled the remonstrance that they were conclusions of law not supported by the evidential facts.

It is found in the referee's report that a considerable number of the orders obtained by the defendant and given by it to the plaintiff were orders taken upon a printed form of contract called a "specific work contract." This recited that it was an agreement and memorandum of sale between Pennsylvania-Dixie Cement Corporation and the named contractor, and these contracts were executed by the contractor and "Pennsylvania-Dixie Cement Corporation. The H. Wales Lines Co., Representative." The referee found that contractors who contemplated bidding on construction contracts requiring the use of cement would place an order with the defendant for at least five hundred barrels and seek a price for the cement to aid them in making the bid; the defendant would place its order with the plaintiff, and in all such orders the plaintiff would require a written contract with the signature of the parties to whom the shipments were to be made.

The plaintiff guaranteed a fixed price for the cement during the life of the contract, and that the buyer should receive the benefit of any reduction in price made during that period. The plaintiff did not come in contact with the buyers under these contracts, which were secured by the defendant, and as shipments were made invoices were sent to the defendant and paid by it. The remonstrance of the defendant to that portion of the report of the referee dealing with these specific work contracts reads as follows: "The conclusions of said specific work contracts referred to as Exhibit 23 was a question of law for the court and not a question of fact for said State Referee." If by this is meant that the conclusion of the referee that the sales made by the plaintiff in connection with these contracts were made directly to the defendant was a conclusion of law, it is sufficient to say that it was a conclusion of fact supported by the subordinate facts found. If, as suggested upon the argument and in the briefs, it is claimed that the referee based his conclusion upon facts found by him which contradicted the statements contained in the printed form of contract which was in evidence, then it would appear that the real grievance of the defendant was that these facts were proved by parol evidence which was received to contradict or vary the terms of the written contract. The remonstrance presents no claim of error in any rulings of the referee in regard to this matter. That the facts found by the referee may be inconsistent with language used in the specific work contracts does not require the conclusion that these facts were not properly found by the referee from all the evidence before him.

The claim of the defendant that its parol agreement to pay for the cement under the specific work contracts was one to pay for the debt, default or miscarriage of

another, and therefore invalid because not in writing, is without merit in view of the finding in the referee's report that this cement was sold directly by the plaintiff to the defendant.

After the hearing before the referee and the filing of his report, the defendant moved that the action be dismissed and erased from the docket on the ground that the plaintiff was a foreign corporation doing business in this State and had not complied with the requirements of our statutes with reference to such corporations transacting business in this State. General Statutes, §§ 3488, 3489. There is no finding that the plaintiff had any place of business in this State or that the sale of goods by it to the defendant was consummated here, but on the contrary, it is found that orders were sent to it by the defendant and accepted presumably at its home office. The operations of the plaintiff did not constitute the transaction of business in this State within the meaning of our statutes prescribing conditions of doing such business by a foreign corporation. See cases cited in 60 A. L. R. 994, 1011.

There is no error.

In this opinion the other judges concurred.