SINGER v. A. HOLLANDER & SON, Inc.

No. 10855.

United States Court of Appeals
Third Circuit.

Argued Dec. 19, 1952.

Decided Jan. 27, 1953.

---

Appeal from United States District Court for Dist. New Jersey, Forman, Judge.

Joseph Weintraub, Newark, N. J. (McGlynn, Weintraub & Stein, Newark, on the brief), for plaintiff-appellant.

Meyer E. Ruback, Newark, N. J. (Ruback, Albach & Weisman, Newark, on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This suit under the federal antitrust statutes[1] marks another battle in a long internecine war carried on between the parties.[2] No doubt the fact that the litigants stem from common ancestors has added zest to the contest in their various legal jousts.

The facts which are the background of this particular piece of litigation have been stated so many times that we shall not waste good printers' ink and law library shelf space by a long recital of them. They were fully stated and considered by Judge Forman in the district court 110 F.Supp. 71, and were likewise set out in litigation between the parties in the case of A. Hollander & Son v. Imperial Fur Blending Corp., 1949, 2 N.J. 235, 66 A.2d 319. It is sufficient to say here that Singer entered Hollander's service in 1940 upon a five-year term of employment. Employer and employee executed a long, elaborate contract most of which is not important for our case here. The two provisions about which the plaintiff complains in federal court are sections 4 and 8 of the contract. One of them bound the employee not to engage in the fur-dyeing business for two years following the expiration of the five-year period. The other provided that the employer could, during the term of employment, "suspend" the employee from his position, paying him his salary during suspension, and that the employee would not, if, as and when suspended, engage in gainful occupation during the time. Singer was suspended during his term of employment, was paid, and what else he did during the time will be developed presently. Singer asserts that these two provisions are in violation of federal antitrust legislation and claims damages and injunctive relief. This the district court refused him and, on motion, entered summary judgment for the defendant.

In New Jersey state court litigation Singer claimed that the two-year provision was an unreasonable restraint of trade and that the provision for suspension was illegal because it deprived the world of his genius as a processor of rabbit skins during its operation. Both claims were denied by the Supreme Court of New Jersey and the Hollanders were awarded a sweeping victory by the decision cited above.

The plaintiff has had the benefit of ingenious counsel, no matter what his per-

---

1. 15 U.S.C.A. § 1 et seq.

2. As represented by the following suits cited in Judge Forman's opinion: Philip A. Singer & Bro., Inc. v. A. Hollander & Son, Inc., 1929, 104 N.J.Eq. 352, 145 A. 621; A. Hollander & Son, Inc. v. Philip A. Singer, et al. (unreported), Docktd in Chancery Clerk's Office 73/65 (1929); A. Hollander & Son, Inc. v. Philip A. Singer & Bro., Inc., 119 N.J.Eq. 52, 180 A. 671, affirmed, 1935, 120 N.J.Eq. 76, 183 A. 296; Philip A. Singer & Bro., Inc., v. A. Hollander & Son, Inc., U.S.Dist.Ct., D.N. J., L-5620 & E-5626, respectively, filed May 7, 1936 & Nov. 12, 1936.

sonal shortcomings may have been. It is argued here that in spite of having lost the battle in the New Jersey courts the field is open for another engagement in a federal forum. While what constitutes an unreasonable restraint of trade, it is said, is a common law matter, nevertheless a federal court, which has exclusive jurisdiction of suits under the Clayton Act,[3] must adopt its own test of what the common law is with regard to restraint of trade. Otherwise there might be as many tests for liability-creating conduct under antitrust statutes as there are states. Furthermore, it is argued, a state decision saying that under state law a given restraint is not unreasonable is not res judicata in a suit under the federal statutes because the subject matter is not the same. The New Jersey court in this case, the argument continues, could decide that this contract was not unreasonable under the law of New Jersey, but the legal conclusion that it is not unreasonable under the law of New Jersey is, it is urged, of no relevance in determining whether it is unreasonable under the federal statute. So, the plaintiff urges, he is entitled to have the employment contract looked at anew through federal eyes.

For the purpose of this case only we go along with this argument. The district judge did also. Assuming, then, that federal questions are to be looked into, what issues do they present? One is an interesting point of the sort lawyers like to call "nice," namely, do the antitrust statutes apply to contracts of employment? There

certainly is an indication that they do from the Gardella case.[4] And, for the purpose of this litigation, we may assume that on a proper set of facts relief against a contract of employment which constitutes unreasonable restraint of trade, or a contract tending to monopoly and involving interstate commerce, might be had under the antitrust legislation. We assume, but we do not decide it. On the basis of that ad hoc assumption of law, there would follow the questions whether the restrictive provisions in the Singer-Hollander employment contract were such as to bring the agreement under the ban of federal antitrust law.

But before an examination of these interesting and difficult questions, there is the matter of an ubiquitous rule which cuts clear across this litigation. The district judge pointed it out. What he said was something the plaintiff obviously does not care to stress here, that is, that although the decision made by New Jersey's highest court on New Jersey law is not a decision governing either liability or immunity under federal statutes, nevertheless facts found through litigation in any form are in general conclusive upon the parties and those in privity with them in litigation thereafter. The district judge was clearly correct in this.

What he was applying is the branch of res judicata known as collateral estoppel.[5] It is growing law and has been the subject of very considerable development in the last decade by the Supreme Court of the United States.[6] A short paragraph from

---

**3.** 15 U.S.C.A. § 15. Blumenstock Bros. v. Curtis Pub. Co., 1920, 252 U.S. 436, 440, 40 S.Ct. 385, 64 L.Ed. 649; Freeman v. Bee Machine Co., 1943, 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509; Pennsylvania-Dixie Cement Corp. v. H. Wales Lines Co., 1935, 119 Conn. 603, 178 A. 659.

**4.** Gardella v. Chandler, 2 Cir., 1949, 172 F.2d 402.

**5.** Restatement, Judgments, § 68, § 70. "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. * * *" See

also § 68, comment c: "Where a question of fact is put in issue by the pleadings and is submitted [to the trier of fact] for its determination, and it is determined, the question of fact is actually litigated, and the judgment is conclusive between the parties in a subsequent action on a different cause of action."

**6.** "But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of

Stoll v. Gottlieb, 1938, 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104, states the essential reason for the rule:

"Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first."

When the facts found in the New Jersey litigation between the parties are examined we think that the legal contentions made in the plaintiff's argument remain as interesting problems but give him no help.

In the New Jersey litigation the Supreme Court of New Jersey affirmed "the findings of fact made by the Vice Chancellor and incorporated in the final decree." 66 A.2d at page 327.

The Supreme Court of New Jersey also made some fact statements of its own. That court said:

1. "The record establishes beyond doubt Singer's infidelity to Hollander through failure to serve faithfully and exclusively; divulgence of trade secrets to Imperial Corporation, specifically organized by him to compete with Hollander during the period of employment; granting to Imperial of for-

mulae developed by him; and active competition against Hollander subsequent to discharge, all in violation of the express provisions of the employment contract. Under the contract he was to be loyal, faithful and dependable, but the record conclusively shows him to have been subtle, false and treacherous. Breach of the employment contract by Singer is clear and unequivocal and his conspiracy with the other respondents to profit from the trade secrets and formulae of the appellant is fully and firmly established." 66 A.2d at page 323.

2. "The covenants in Paragraphs 2 and 3 in the employment contract to perform faithfully the assigned duties, not to divulge trade secrets or processes or use them for personal profit, to turn over to the employer all new discoveries made by Singer and not to engage in other businesses during the term of employment, are clearly reasonable demands which the employer may exact from his employee. * * * The validity of these covenants cannot be and is not disputed but it is claimed breaches thereof have not been established. The record fully supports the conclusion that each restriction has been violated by Singer * * *." 66 A.2d at page 325.

Some of the findings of the Vice Chancellor thus affirmed by the Supreme Court may be noted. It is necessary to state these because the Vice Chancellor's opinion has not been printed and was marked "not for print in any report." We shall not men-

the Law of Judgments, §§ 68, 69, 70 * * *." Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898. In Davis v. Davis, 1938, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, Sherrer v. Sherrer, 1948, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, and Coe v. Coe, 1948, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451, the court went very far in applying these rules in the area of interstate divorce. The issue of fact there involved was the jurisdiction of the court that awarded the divorce. The Supreme Court held that since both spouses were present in the divorce court, "It is clear that respondent was

afforded his day in court with respect to every issue involved in the litigation, including the jurisdictional [ones]." 334 U.S. at page 348, 68 S.Ct. at page 1089. "Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings * * *." 334 U.S. at page 351, 68 S.Ct. at page 1091. See also Johnson v. Muelberger, 1951, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, and Cook v. Cook, 1951, 342 U.S. 126, 72 S.Ct. 157.

tion all of them by any means but will pick out some which seem to us significant. Among the Vice Chancellor's findings are these:

1. That Singer had been entrusted with Hollander's master formulae books.

2. During the period of his employment he promoted and organized a rival business contrary to the terms of the contract.

3. He was suspended because Hollander's management became suspicious of his activities in connection with this rival business.

4. When suspended he removed the formulae books from the plant "and destroyed such papers and documents as he thought might later embarrass him."

5. He gave a man named Villani instructions in expert dressing and dyeing of rabbit fur and allowed this man access to his employer's formulae books.

6. He went into the employment of the rival company immediately after the termination of his contract and ignored the provision for staying out of competition after the termination of his contract.

All these conclusions of fact and others were worked out in a case in which there was voluminous testimony and in which the Vice Chancellor, in commenting upon it, said he had never had a case in which so much perjured testimony had been given.

During the argument before us suggestions were made that certain findings of the New Jersey courts were without sufficient support in the evidence. This is an argument without weight. We are not here reviewing, and it is not our business to review, the correctness of fact conclusions reached by the Vice Chancellor of the State of New Jersey and its Supreme Court. The parties had their days and weeks in those courts, and the very basis of the rule of collateral estoppel is that after such a trial fact issues are concluded. As the Supreme Court pointed out in the quotation above, there is no reason to expect that another contest would produce any more accurate a result.

Where does this recital leave the plaintiff's case? In the first place, it surely settles any claim he has to equitable relief of any kind. It is undisputed that one who seeks equitable relief must come with clean hands. On the basis of the facts found this plaintiff has hands which all the perfumes of Arabia would not sweeten.

The fact findings cut deeper than any narrow application of the clean hands maxim, however. Singer is found to have violated nearly every one of the relational duties which arise out of the employment of one person by another. He is not a case of an unskilled laborer. According to his own claims, Singer is a possessor of superior skill in one branch of the fur industry. He was employed by Hollander as an expert and executive, and put in charge of the Long Branch, New Jersey, plant of his employer. As the Supreme Court of New Jersey pointed out, the obligation to serve faithfully, not to use his employer's secrets for personal profit, and the like, were written into the contract and were flouted by Singer. But such duties were not created by the contract. They exist as a matter of common law and they arise from the relationship between the parties. It does not take a contract to call for the duty of loyalty on the part of an agent, nor to provide that one who works for another shall not steal the latter's property, tangible or intangible. All these are matters of common law.[7] "To be secretly acting for the benefit of an adverse party, while ostensibly acting for one of the parties, is a fraud upon the latter, and a breach of public morals

---

**7.** "An agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement, Agency, § 387. "Unless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency." Id. § 393. "Unless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during his agency * * *." Id. at § 395. Disclosure of confidential information or trade secrets is an actionable tort. Restatement, Torts, § 757. See the discussion of an employee's duty of loyalty by Judge Kalodner in Pollock v. MacElree, D.C.E.D.Pa.1944, 56 F.Supp. 961.

which is not permitted." Winget v. Rockwood, 8 Cir., 1934, 69 F.2d 326, 330.

Assume for the moment that there is some claim the plaintiff could make against the defendant on the basis of antitrust law.[8] Let it be understood that this is an assumption, not a conclusion. Has he standing to ask for judgment in his favor? We think not. There are analogous instances in the law where one loses his standing to enforce a right because of his own misconduct. Thus, one who owns a trade-mark and uses it to deceive the public may not have relief for what otherwise would be an actionable infringement.[9] Again, one who possesses the law-given monopoly of a patent loses his rights against infringement if he has sought to extend his patent monopoly into matters in the public domain.[10]

These are instances where the plaintiff's wrongdoing is directed toward the public at large. We think this case is stronger against one who has so grossly violated a fiduciary relationship as this plaintiff has done. He may not be heard to complain of some incidents in an employment relationship whose fundamentals he has completely repudiated by his conduct.

The judgment of the district court will be affirmed.

---

8. See a full exposition of the right of one party to a contract in restraint of trade to pursue his antitrust remedies against another party, in Ring v. Spina, 2 Cir., 1945, 148 F.2d 647, 652–653, 160 A.L.R. 371.

9. Restatement, Torts, § 749.

10. Morton Salt Co. v. Suppiger Co., 1942, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; Mercoid Corp. v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Barber-Colman Co. v. National Tool Co., 6 Cir., 1943, 136 F.2d 339.