CONNECTICUT TOOL AND MANUFACTURING COMPANY, INC. *v.* BOWSTEEL DISTRIBUTORS, INC.

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE NO. 84384

Memorandum filed March 4, 1963

*Alcorn, Bakewell & Smith,* of Hartford, for the plaintiff.

*Robinson, Robinson & Cole,* of Hartford, for the defendant.

LUGG, J. The subject of controversy raised by this plea in abatement is the application to the in-

stant facts of § 33-411 of the General Statutes of Connecticut, entitled "Service of process on foreign corporation." This is part of the new Stock Corporation Act, adopted by the 1959 session of the General Assembly effective 1 January 1961. It was amended by §§ 90 and 91 of Public Act No. 327 of the 1961 session, effective 1 October of the latter year. No case affecting the present issue has yet been decided by any of the courts of this state, *Nevins* v. *Revlon, Inc.,* 23 Conn. Sup. 314 (1962), the sole case citing the section, being on another point.

The following facts are found. The defendant is a New Jersey corporation engaged in the manufacture and sale of specification material products. It buys its raw materials from suppliers such as The Bethlehem Steel Company and The Republic Steel Company and serves customers constituting a worldwide trade. One of its employees, one Lehmacker, is assigned to the six New England states, in which he visits potential customers. He lives in the state of Connecticut, although not required to do so in the course of his employment by the company. The latter has seven different "Enterprise" telephone numbers, each in a different city in this state. It advertises in the yellow pages of the telephone directories in the cities where the "Enterprise" numbers are listed. The defendant prepares and distributes to potential customers a stock list which advises them of the products it is prepared to sell and is intended for use by them in ordering. It accepts orders at Linden, New Jersey, and ships the goods to its customers. It has been selling its products in Connecticut for about fourteen years. Its customers are worldwide, and it has about one hundred of them in this state, examples being Pratt and Whitney Aircraft, Hamilton Standard Propeller, United Aircraft and Sikorsky Aircraft. Its

gross sales in Connecticut in 1961 amounted to about one-half a million dollars, and the indications are that its gross in 1962 will equal the same.

Lehmacker's function is that only of a salesman. He makes business calls on various companies and takes their appropriate officers to golf, luncheons and dinners in connection with the company's business. He has a car which he uses in the pursuit of his employment, and the company reimburses him for travel expenses at the rate of $.08 a mile. He occasionally calls in orders directly to the company, although they are usually transmitted by purchase orders directly to the defendant by the customer. His job is to improve customer relations, and in addition to visiting and entertaining customers he discusses complaints with them. Other customers of the defendant in this state include the National Aeronautic Company, which has done business with the defendant for about twelve years. It has been called on by Lehmacker, who has invited its purchasing agent out socially, which is a recognized form of solicitation. The defendant's agent, Lehmacker, has continually solicited this company as well as others in Connecticut. The Fenn Manufacturing Company receives visitations from Lehmacker about every eight or nine weeks. He solicits it for orders and entertains its officers at lunch and golf. Complaints of the company are discussed with him. These patterns of conduct by the defendant are the same as those on the part of other industries similar to the defendant.

The plaintiff is a Connecticut corporation with its principal place of business in this state. It is a small company whose gross annual sales are about $150,000 to $200,000. There are quite a few groups of this size in Connecticut engaged in making aircraft and missile parts. The purchases made from

the defendant by the plaintiff are of a general pattern. The plaintiff is a small company and placed the following orders with the defendant: 1955, $5; 1957, $59; 1960, $252.87. It too is solicited by Lehmacker, and Lehmacker's activities as a salesman as to it are typical of those engaged in by similar businesses. The product ordered from the defendant by the plaintiff was consumed at its factory in New Britain, Connecticut, in the course of its manufacturing activities. The basis of this action is false and fraudulent misrepresentations and warranties to the plaintiff by the defendant concerning the product so ordered and consumed.

The defendant's initial point involves a technical matter, namely, that jurisdiction over it can be asserted only under subsection (c) of § 33-411 and that therefore subsection (d) of the same section applies. "In any action brought under subsection (b) or (c) of this section or under subsection (e) of section 33-371, the secretary of the state shall be deemed the agent and attorney of the corporation in this state and service of process on such corporation shall be made as provided in subsection (a) of this section, except that the secretary of the state shall address the copy thereof to the corporation at its office as shown in the official registry of the state of its incorporation, which address shall be set forth in the writ or other process." § 33-411 (d). The address is not set forth in the writ as required, although a purported amendment was filed after the original service was made. Defendant asserts that this is a jurisdictional defect and hence not curable by amendment. Its citations do not support its contention. In both *Hyde* v. *Richard,* 145 Conn. 24 (1958), and *FitzSimmons* v. *International Assn. of Machinists,* 125 Conn. 490 (1939), service was made upon the wrong person, i.e., one other than the person specified by the stat-

ute involved. In *Galvin* v. *Birch,* 97 Conn. 399 (1922), an amendment was refused because no complaint accompanied the writ. Whether the amendment should be allowed or not is not now before us, and in the view we take of the case, its effect is academic.

We hold that the failure to include the address in the writ is embraced within the intendment of § 52-123, "Circumstantial defects not to abate pleadings": "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court." This statute applies to circumstantial defects attacked by pleas in abatement. *New Haven Loan Co.* v. *Affinito,* 122 Conn. 151 (1936); *Schroeder* v. *Tomlinson,* 70 Conn. 348 (1898); *Draper* v. *Moriarty,* 45 Conn. 476 (1878); *Wilcox* v. *Chambers,* 34 Conn. 179 (1867). The defect complained of does not prevent this cause from being "rightly understood and intended by the court." Furthermore, no injustice to the defendant is apparent, since it obviously received notice of the inception of the action.

The next point to be discussed is whether the defendant was amenable to service under § 33-411 (b), which reads: "Every foreign corporation which transacts business in this state in violation of section 33-395 or 33-396 shall be subject to suit in this state upon any cause of action arising out of such business." Section 33-395 is not applicable, since the defendant is not one of the types of corporations therein listed. Section 33-396, however, is another matter. It reads, in part: "No foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it

has procured a certificate of authority so to do from the secretary of the state." The defendant quickly dismisses this as inapplicable, claiming it is exempted by § 33-397, the material portion (subsection [b]) of which reads: "Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state by reason of carrying on in this state any one or more of the following activities: . . . (8) transacting business in interstate commerce; . . . ." This contention puts a false construction on these statutory passages. What the defendant is saying is this: If a corporation is carrying on in this state any one or more of the nine activities listed in § 33-397 (b), it is therefore not transacting business in Connecticut. Obviously, the section has not and does not intend to have any such result. What it does mean is this: A foreign corporation shall not be considered to be transacting business in this state solely because it carries on in this state one or more of the enumerated activities. This does not exclude a finding that a foreign corporation transacts business in this state if its other activities lead to that conclusion.

Examination of the recent statutory trend on the subject reveals it to be in the direction of expanding jurisdiction over foreign corporations. *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957); 18 Fletcher, Corporations § 8711. This is certainly true in Connecticut. "There are no Connecticut cases which construe the clause 'which transacts business in this state' in § 52-59a, the Connecticut statute . . . [on service of process on nonresidents doing business in Connecticut], but the apparent purpose of this legislation was to provide a method for obtaining jurisdiction over foreign corporations and others which had not formally designated the

secretary of the state an agent for service of process, but which, nevertheless, had engaged in sufficient activity in the state to warrant their amenability to suit in the state under the broad principles defined in *International Shoe Co.* v. *Washington,* . . . [326 U.S. 310 (1945)] and its progeny. Prior to the enactment of this section, there had been no provision in Connecticut law for such service. It is notable that the governing section was enacted at the same session of the legislature as the Stock Corporation Law. § 33-411 of the Corporation Law provides for service on the secretary of the state and makes foreign corporations subject to suit on causes of action arising '(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.' The Corporation Law became effective January 1, 1961 while § 52-59a became effective on October 1, 1959; however, one commentator believes they 'exist in the law side by side.' Cooper, 'New Connecticut Corporation Laws,' 34 Conn. B.J. 225, 238 (1960). The wording of the two statutes, read in the light of the 'solicitation plus' doctrine of prior Connecticut case law, *Alfred M. Best Co., Inc.* v. *Goldstein,* 1938, 124 Conn. 597 . . . ; *Moore* v. *Crestwood Manor, Inc.,* 1953, 18 Conn. Sup. 387, indicates a desire by the legislature to enlarge the scope of jurisdiction to the greatest permissible extent. It, therefore seems clear that the Connecticut courts would hold that General Products Corporation 'transacts business' in the state to a sufficient degree to subject it to process under the provisions of § 52-59a." *Winchester Electronics Corporation* v. *General Products Corporation,* 198 F. Sup. 355, 357 (1961).

In the 1961 session of the General Assembly, § 92 of Public Act No. 327, "An Act concerning Technical Amendments to the Stock Corporation Act," deleted

from § 52-59a the references to corporations. This, however, is not to be construed as reducing the scope of the jurisdiction obviously intended by the legislature. The amendment was, on the contrary, patently a mere technical correction of the overlapping and duplication of these sections. "Revisers are presumed not to change the law." *State* v. *DeGennaro,* 147 Conn. 296, 303 (1960). "Unless it clearly appears otherwise, revisers are presumed to have expressed in their revision the intent of existing statutes, though they may have altered the form of their statement. *Norwalk* v. *Daniele,* 143 Conn. 85, 87 . . . ; *In re Appeal of Dattilo,* 136 Conn. 488, 492 . . . [*Sigal* v. *Wise,* 114 Conn. 297, 305 (1932)]. The language of the statute as revised or the legislative intent to change the former statute must be clear before it can be pronounced that the statute was changed in respect to its construction and operation." *Wilson* v. *Miller,* 144 Conn. 212, 216 (1957).

The recital of facts above is conclusive that the defendant "transacts business in this state"; § 33-411 (b); and it is so found. As the plea in abatement admits, it is not qualified to do business in Connecticut. It is therefore clearly "in violation of section . . . 33-396" and hence "subject to suit in this state" upon this cause of action, which arises out of such business. § 33-411 (b).

Such a construction does not bring the application of § 33-411 to the facts in this case under that unconstitutionality which the defendant urges upon us. It violates neither the fourteenth amendment to the constitution of the United States nor § 12 of article first of the constitution of Connecticut. "Since *Pennoyer* v. *Neff,* 95 U.S. 714, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state

courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in *International Shoe Co.* v. *Washington,* 326 U.S. 310, the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id., at 316. Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 222.

It is a sufficient comment on the doctrines of such previous cases in this state construing the phrase "transacting business" as *Alfred M. Best Co.* v.

*Goldstein,* 124 Conn. 597 (1938), and *Pennsylvania-Dixie Cement Corporation* v. *H. Wales Lines Co.,* 119 Conn. 603 (1935), that they antedate the current policies of the General Assembly and the case law outlined above. In any event, their emphasis was principally on mere solicitation.

There has been some discussion in recent federal cases concerning the Connecticut statutes referred to above. "There is no doubt that Connecticut might have extended its power over foreign corporations further than it has chosen to under § 33-411. The test of jurisdiction is no longer based on a fictional 'presence' arising from 'transacting' or 'doing business,' *McGee* v. *International Life Insurance Co.,* 355 U.S. 220 . . . (1957), but is realistically based upon a balancing of interests to test whether the exercise of jurisdiction offends 'traditional notions of fair play and substantial justice.' *International Shoe Co.* v. *State of Washington,* 326 U.S. 310 . . . (1945); and see: L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 1959, 265 F.2d 768, 773-774, fn. 12; Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502, 507-508." *Southern New England Distributing Corporation* v. *Berkeley Finance Corporation,* 30 F.R.D. 43, 48 (1962). This case is not pertinent here, however, on the facts.

The following passages from *Winchester Electronics Corporation* v. *General Products Corporation,* 198 F. Sup. 355, 356-58 (1961), are significant. "The defendant's business in Connecticut is not incidental or casual. Its purchases in Connecticut between April 12, 1960 and May 25, 1961 totaled $350,000 and its sales in the State of Connecticut for the year ending May 1, 1961 totaled $39,005. . . . With regard to due process, it is apparent that the activities of the defendant were systematic

and continuous. . . . The federal court must also be satisfied that the pertinent provisions of the state law are reasonable and just according to traditional notions of fair play and substantial justice and, thus, satisfy due process under the Federal Constitution, Amend. 14. International Shoe Co. v. Washington, 1945, 326 U.S. 310 . . . ; McGee v. International Life Ins. Co., 1957, 355 U.S. 220 . . . ; Hanson v. Derckla, 1958, 357 U.S. 235 . . . ."

This view of the case renders academic the defendant's other attacks upon this service. However, in the interest of avoiding the possible necessity of further litigation, we refer to them. Together, they are based on the contention that subsection (c) of § 33-411 cannot be applied here. It reads: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of mis-

feasance or nonfeasance." We cannot agree with defendant's superficial treatment of (1) and (4). The pleadings and facts in the case are such as to permit the possible conclusion that this contract was to be performed by delivery in this state; (1); and that the tortious conduct here set out, namely misrepresentation, took place in this state. (4). The material purchased by this plaintiff certainly constituted business solicited in this state by mail or otherwise, and the defendant has repeatedly so solicited business here. (2). Defendant concedes that (3) applies, as it must because of the expectation that the goods were to be used or consumed here and the realization of that expectation. Neither this section nor any of its subdivisions invite the constitutional animadversion the defendant would cast upon them. We hold that the decisions above cited envision the acquisition of jurisdiction in this case under this law.

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. *St. Louis S.W.R. Co.* v. *Alexander* . . . [227 U.S. 218, 228]; *International Harvester Co.* v. *Kentucky* . . . [234 U.S. 579, 587]. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pen-*

*noyer* v. *Neff* . . . [95 U.S. 714]; *Minnesota Commercial Assn.* v. *Benn,* 261 U.S. 140. But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare *International Harvester Co.* v. *Kentucky,* supra, with *Green* v. *Chicago, B. & Q.R. Co.* . . . [205 U.S. 530] and *People's Tobacco Co.* v. *American Tobacco Co.* . . . [246 U.S. 79]. Compare *Connecticut Mutual Co.* v. *Spratley* . . . [172 U.S. 602, 619, 620] and *Commercial Mutual Co.* v. *Davis* . . . [213 U.S. 245] with *Old Wayne Life Assn.* v. *McDonough* . . . [204 U.S. 8]. See 29 Columbia Law Review, 187-195. Applying these standards, the activities carried on in behalf of . . . [the foreign corporation in this state] were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which . . . [the corporation] received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which . . . [the corporation] has incurred there. Hence we cannot say that the maintenance of the present suit . . . involves an unreasonable or undue proce-

dure." *International Shoe Co.* v. *Washington,* 326 U.S. 310, 319. . . . (1945).

The plea in abatement is dismissed.