LOUIS GOLDMAN *v.* ALBERT FEINBERG ET AL.

MALTBIE, C. J. BROWN, JENNINGS, ELLS AND INGLIS, JS.

Argued February 2—decided April 6, 1944.

*Alfonse C. Fasano,* with whom, on the brief, was *Morris B. Snaider,* for the appellant (plaintiff).

*Joseph Weiner,* for the appellees (defendants).

INGLIS, J.   This is an action to recover damages for wrongfully depriving the plaintiff of a broker's commission.   The facts may be summarized as follows: Early in 1940 the named defendant, hereinafter referred to as the defendant, requested the plaintiff, who was a real estate broker in New Haven, to show him some houses which were for sale.   During the next seven months the plaintiff attempted to interest the defendant in various properties but to no avail. Finally, in early August, the plaintiff saw a list of properties which had been distributed to the public by the New Haven Savings Bank.   This was a so-called "special list" which described various pieces of real estate for sale by the bank at the prices shown with the statement that those prices were irreducible.

One of the properties so listed was 19-21 West Rock Avenue, and the plaintiff, having obtained permission from the bank to inspect that property, took the defendant and his father, the defendant Samuel Feinberg, to view it.   Thereafter, the defendant asked the plaintiff to ascertain from the bank whether this property could be bought for less than $7500, the price at which it was listed.   The plaintiff reported to the defendant that that price could not be lowered, whereupon the defendant said, "All right.   Let it go for a

while and I'll let you know." At this time the defendant was unwilling to purchase the property for $7500.

During the following month, that is, in September, 1940, the defendant purchased the same property from the bank, paying $7500 therefor, but the bank paid to the defendant Samuel Feinberg a commission of $225 as a result of the sale. The plaintiff never informed the bank that he was negotiating with the defendant as a prospective purchaser of the property nor did he ever introduce the defendant to the bank as a prospective purchaser.

The theory upon which the plaintiff predicates his cause of action is that the defendants conspired fraudulently to represent to the bank that Samuel Feinberg was the broker procuring the sale and thereby deprived the plaintiff of the commission which he otherwise would have been able to earn. The trial court concluded that the plaintiff, having acquired no right to receive the commission, suffered no damage by reason of any acts of the defendants; and for that reason, among others, entered judgment for the defendants. The crux of the case is in this conclusion. The plaintiff attacks it on the ground that the court should have found that, as a result of the conspiracy between the defendants, the plaintiff was damaged by the amount of "the commission which would have been paid to the plaintiff except for the interference of the defendant." The evidence, however, does not compel this finding. The only basis for the plaintiff's claim is the fact appearing in the evidence that a commission on the sale was actually paid to Samuel Feinberg, and we cannot say that the trial court was bound to infer from that that the bank would have been obligated to pay, or probably would have paid, a commission to the plaintiff if he had introduced the defendant to it. The trial court might well have inferred from the evidence that

the payment of the "commission" to the defendant's father was in essence a reduction of the purchase price rather than recognition on the part of the bank that it was obligated to pay anyone a commission on the sale. It is found, and the evidence justifies the finding, that the bank had not listed the property with the plaintiff. The bank did not know him as a broker in the transaction and he had never informed the bank that he was negotiating with the defendant. We therefore cannot hold that there was no reasonable basis for the conclusion of the trial court that the plaintiff had not been damaged by any acts of the defendants. *Murphy* v. *Linskey,* 94 Conn. 475, 477, 109 Atl. 412. He had not been deprived of anything which, except for the interference of the defendants, he would probably have received. Accordingly, the question of law involved in the case is whether the plaintiff, in order to make out a cause of action, must prove that he would have made a profit except for the unlawful interference with his business by the defendants.

We, in this state, recognize that a cause of action does exist for unlawful interference with business and that it is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plaintiff. *Wyeman* v. *Deady,* 79 Conn. 414, 65 Atl. 129; *Skene* v. *Carayanis,* 103 Conn. 708, 131 Atl. 497. As we said in the *Skene* case (p. 714), "The law does not, however, restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor."

It does not follow from this, however, that a plaintiff may recover for an interference with a mere possibility of his making a profit. On the contrary, wherever such a cause of action as this is recognized, it is held that the tort is not complete unless there has been actual damage suffered. Pollock, Torts (14th Ed.), p. 441; Winfield, Law of Tort (2d Ed.), p. 643; Prosser, Torts, pp. 1016 et seq. To put the same thing in another way, it is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit. *Morrell* v. *Wiley,* 119 Conn. 578, 584, 178 Atl. 121; *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 Atl. 855; *Lewis* v. *Bloede,* 202 Fed. 7, 120 C. C. A. 335; *Debnam* v. *Simonson,* 124 Md. 354, 92 Atl. 782; *Union Car Advertising Co.* v. *Collier,* 263 N. Y. 386, 189 N. E. 463. In *Lewis* v. *Bloede,* supra, the Circuit Court of Appeals says (p. 17): "When the parties have entered into a contract, the terms of which are fixed, the plaintiff is only required to show the malicious interference and the damage proximately resulting; whereas, if the ground of complaint is that he was about to make a contract, he is required to go further and show that he was not only 'about to,' but would, but for the malicious interference of the defendants, have entered into the contract." And in *Union Car Advertising Co.* v. *Collier,* supra, 401, it is stated: "There must be some certainty that the plaintiff would have gotten the contract but for the fraud. This cannot be left to surmise or speculation."

There is nothing in either *Wyeman* v. *Deady,* supra, or *Skene* v. *Carayanis,* supra, which is in conflict with this principle. In each of those cases it was apparent that the plaintiff would have reaped a financial benefit

if it had not been for the unlawful acts of the defendants. The instant case is therefore distinguishable from those in that here it does not appear that any acts of the defendants prevented the plaintiff from making a profit which he otherwise would have made. In other words, it does not appear that the plaintiff has sustained any damage as a result of those acts. For that reason the plaintiff has not made out a complete cause af action for unlawful interference with his business.

The decision of this issue is conclusive of the case. The decision of the questions raised by the other assignments of error could not change the result, and it is therefore unnecessary to discuss them.

There is no error.

In this opinion the other judges concurred.