A. Hunter BOWMAN d/b/a American Sales Company, Grolsch-Michigan, Inc., and Groenlo Marketing, Inc., Plaintiffs,

v.

GROLSCHE BIERBROUWERIJ B.V., and Frans de Groen, Defendants.

Civ. No. B–76–344.

United States District Court, D. Connecticut.

July 9, 1979.

726

Arthur Rogers Ivey, Ivey, Barnum & O'Mara, Greenwich, Conn., for plaintiffs.

Kenneth D. Wallace, Stamford, Conn., Philip E. Silberberg, pro hac vice, New York City, for defendants.

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

DALY, District Judge.

This diversity action arises out of an alleged 1973 contract by which defendant Grolsche Bierbrouwerij B.V. (Grolsche), a Netherlands corporation, is alleged to have granted to plaintiff A. Hunter Bowman d/b/a American Sales Company (American) the exclusive right to develop and supply the United States market for Grolsche's "Grolsch" beer products. Plaintiffs Grolsch-Michigan, Inc. (Grolsch-Michigan) and Groenlo Marketing, Inc. (Groenlo) are corporations formed by American to act as importer and promoter, respectively, of Grolsch beer in the United States. Defendant Frans de Groen (de Groen), is an officer of Grolsche.[1] The four-count complaint

---

1. Plaintiff A. Hunter Bowman d/b/a American Sales Company is a Connecticut citizen and has a place of business in Greenwich, Connecticut. Plaintiff Grolsch-Michigan, Inc. is a Mich-

contains allegations that Grolsche breached the alleged contract and committed common-law fraud, that de Groen wrongfully interfered with the contractual relations between Grolsche and American and conspired to destroy the business of all plaintiffs, and that both Grolsche and de Groen wrongfully interfered with the contractual relations between American and the other plaintiffs.

Defendants have moved to dismiss the complaint on two grounds. First, they maintain that this Court lacks *in personam* jurisdiction because, under the facts of this case, none of the provisions of Connecticut's long-arm statutes authorize service upon them, see Conn.Gen.Stat. §§ 33–411 & 52–59b, and because their contacts with this forum have been insufficient to satisfy the "minimum contacts" test required by due process. *See International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Second, they contend that each count except the first (relating to breach of contract) fails to state a claim. In the interests of clarity, the different standards that apply in determining motions to dismiss for failure to state a claim and for lack of *in personam* jurisdiction will be discussed at the outset.

■■■ For the purposes of a motion to dismiss for failure to state a claim, *see* Fed.R.Civ.Pro. 12(b)(6), the allegations of the complaint must be construed in the light most favorable to plaintiff and must be taken as true. *Jones-Bey v. Caso,* 535 F.2d 1360, 1362 (2d Cir. 1976). The Court should not consider matters outside the pleadings, but should examine the complaint in isolation to determine whether it states a claim. *Doherty v. Federal Stevedoring Co.,* 198 F.Supp. 191, 195 (S.D.N.Y. 1961). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■■■ A motion to dismiss for lack of *in personam* jurisdiction, on the other hand, often is a test of plaintiff's actual proof. *See* Fed.R.Civ.Pro. 12(b)(2). The Court must determine whether the appropriate state statute reaches the foreign defendant and, if so, whether such statutory reach meets the constitutional "minimum contacts" test required by due process. *Schreiber v. Blankfort,* 76 F.R.D. 474, 477 (D.Conn.1977); *McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1168 (D.Conn.1973). *Cf. Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (applying "minimum contacts" test to *quasi in rem* jurisdiction). In ruling on such a motion to dismiss, it is appropriate for the Court to consider affidavits submitted by the parties, *Ghazoul v. International Management Services, Inc.,* 398 F.Supp. 307, 309 (S.D.N.Y.1975), and the motion will be denied only where plaintiff can establish *prima facie* conduct by defendant sufficient to justify the exercise of *in personam* jurisdiction. *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.), *cert. denied* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). If the motion is denied, defendant will not be barred from challenging jurisdictional facts at trial.[2] *Id.*

igan corporation with a place of business in Greenwich, Connecticut. Plaintiff Groenlo Marketing, Inc. is a Delaware corporation with its principal place of business in Greenwich, Connecticut. Defendant Grolsche Bierbrouwerij B.V. is a foreign corporation formed and existing by the virtue of the laws of the Kingdom of the Netherlands with its principal place of business in the Netherlands. Defendant Frans de Groen is a subject of the Kingdom of the Netherlands. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

**2.** The original complaint in this action, containing twelve counts and a number of parties no longer present in this action, was filed in November of 1976. Defendants moved to dismiss that complaint, claiming, *inter alia,* lack of *in personam* jurisdiction. Various informal proceedings led to the filing in December of 1977 of the second amended complaint, the complaint presently in issue. In June of 1978, a hearing was held before Magistrate Latimer, pursuant to which he ordered that by July 31, 1978,

> plaintiffs are to serve and file their final submission in support of their claims that personal jurisdiction exists, i. e., their complete evidentiary documentation through affidavits and exhibits in final and admissible form.

With these general considerations in mind, the Court turns to a determination of the motions. It is not disputed that, if *in personam* jurisdiction exists with respect to the first count, it states a claim for breach of contract. Each of the remaining three counts will be examined separately to determine, first, whether the facts provide a jurisdictional basis for the claim put forth in that count, and if so, whether the count states a claim.

*FIRST COUNT*

■ The first count contains allegations that in 1976, defendant Grolsche breached its agreement with plaintiff American. American argues that its strongest jurisdictional basis for this count is Conn.Gen.Stat. § 33–411(c)(1), which provides, in pertinent part, that "[e]very foreign corporation shall be subject to suit in this state . . . on any cause of action arising . . . [o]ut of any contract . . . to be performed in this state . . . ." To establish *in personam* jurisdiction under this provision, American initially must establish *prima facie* that a contract existed and that it was to be performed in Connecticut within the meaning of § 33–411(c)(1).

American's primary evidence of the existence of a contract is a letter sent on September 13, 1973 from Grolsche to American. The original is written in Dutch. American has submitted the original together with a translation certified as accurate on July 27, 1978. The translation reads, *inter alia,* as follows:

> . . . Therefore, we suggest the following:
> 1. Beginning today, we will not respond to any offer-requests from the U.S.A.
> 2. This agreement will remain valid within one year after the arrival of the first shipment of Grolsch in Connect. (sic).
> 3. Within this year you, and we will gain experience, and the possibility of other markets in the U.S.A. (e. g. via

---

The Magistrate also ordered that defendants should file their brief in response by August 28, 1978,

> with or without documentary evidence as they deem appropriate:
> (a) *demonstrating in what respects, if any,* plaintiffs' submission fails on its face to meet their burden of proof as to the jurisdictional issue because, e. g., plaintiffs' legal contentions are incorrect, they rely on irrelevant argument or evidence, or evidence offered is otherwise inadmissible, and (b) if persuaded that plaintiffs' submission is adequate on its face, demonstrating in what respects, if any, particular discovery measures remain essential *to fair overall presentation of the evidence* . . . .

Plaintiffs filed on schedule their brief together with voluminous affidavits purporting to comply with the Magistrate's order, following which defendants filed their brief in response, together with affidavits and objections to or motions to suppress all or portions of the affidavits submitted by plaintiffs. On November 28, 1978, after reviewing all of the documents filed pursuant to the Magistrate's order, this Court sent to plaintiffs' attorneys, with copies as appropriate, a letter requesting "a concise, orderly, and succinct statement of the admissible evidence relied on to establish personal jurisdiction under the relevant statutes." On December 19, after reviewing the documents submitted by plaintiffs pursuant to this letter, the Court issued the following memorandum of decision:

> Defendant's motion to dismiss for lack of personal jurisdiction is granted unless within thirty days plaintiffs comply with the Court's request for a concise, orderly and succinct statement of the relevant and admissible evidence relied upon to support a claim of personal jurisdiction over each of the defendants. The recently submitted 'digest' does not constitute compliance with that request. The Court should not be required to sift through the voluminous and rambling affidavits so far presented in an effort to cull out the essential elements of plaintiffs' claims.

Pursuant to this order, plaintiffs submitted a "Summary Statement of Evidence in Support of Their Claims That This Court Has Jurisdiction Over Defendants."

In view of the proceedings leading to the submission of this document, and plaintiffs' representation that this document contains the complete and final statement of evidence in support of personal jurisdiction, the Court, in ruling on the present motions to dismiss, will look only to the facts set forth in plaintiffs' "Summary," and will rely on them only to the extent that they are supported by admissible statements in affidavits submitted by plaintiffs. The Court, in other words, will not explicitly rule on defendants' motions to suppress plaintiffs' affidavits, but will rely on those affidavits only to the extent it finds them admissible.

colleges (sic) in Ohio) can also be explored.

4. If business in Connecticut should prove to be unsatisfactory, you, and we, will consider the opening of another market in the U.S.A. Should you, and we, decide against this, we both will be free. If we decide *for* this, the agreements under 1 and 2 will be valid for the new market.

5. If business in Connecticut should prove to be satisfactory, you, and we, will prepare for this market a year-and (sic) sales plan, as a condition for the sales monopoly during a number of years to be agreed upon.

6. In the same way as sub 4 and 5 will be acted with regard to new markets in the U.S.A. In the events sub 5 and 6 you will have the first sales rights in the entire U.S.A., provided you work constantly to open new markets. The above mentioned will show you, that you hold all the possibilities for the sale of Grolsch in the U.S.A., under the condition that the possibilities are there, and that you will remain commercially active . . .

■ Defendants have filed an appropriate notice that they rely on the law of the Kingdom of the Netherlands in this case, *see* Fed.R.Civ.Pro. 44.1, and now argue that American has failed to establish the existence of a contract that would be valid and enforceable under the law of the Netherlands. Neither party, however, has briefed or produced evidence of the substance or

effect on this case of the Netherlands law. Under such circumstances, the Court will assume that the law of the Netherlands is the same as the law of Connecticut.[3] *Bartsch v. Metro-Goldwyn-Mayer, Inc.,* 391 F.2d 150, 155 n. 3 (2d Cir.) *cert. den.* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968). *See also Union & New Haven Trust Co. v. Watrous,* 109 Conn. 268, 285, 146 A. 727 (1929); *McGloughlin v. Shaw,* 95 Conn. 102, 106, 111 A. 62 (1920).

■ The evidence presented, construed in the light most favorable to American, establishes *prima facie* that a contract existed. There is no dispute that Grolsche did ship beer to American and that there was an extensive course of dealing between the parties. The letter offered by American as evidence of the alleged agreement is but one in an extensive series of correspondence between American and Grolsche relating to the terms of their business relationship.[4] There is also evidence that for several years Grolsche did ship exclusively to American in this country. This combination of evidence, construed in the light most favorable to American, leads the Court to conclude that American has satisfied its present burden of demonstrating the existence of the alleged agreement. *Cf. R. F. Baker Co., Inc. v. P. Ballantine & Sons,* 127 Conn. 680, 20 A.2d 82 (1941).

The Court now considers whether American sufficiently has established that the contract was "to be performed in this state . . . ." within the meaning of § 33–411(c)(1). It is clear from the evidence

---

**3.** Grolsche also argues that American has failed to establish the existence of an agreement because it has failed to demonstrate that the agreement was executed in accordance with Grolsche's "statuuten" (apparently the Dutch equivalent of articles of incorporation) by showing that two "directeuren" (directors) approved the contract, as required by the "statuuten." It is not clear that American is required in this case to offer proof that more than one director of Grolsche approved this contract, especially because the doctrine of apparent authority might be applicable, *see generally* 2 Am.Jur.2d *Agency* §§ 73–76 (1962, Supp.1978). The Court, therefore, construing the evidence in the light most favorable to American, concludes that American has satisfied its present

burden of proving the regularity of the execution of the agreement.

**4.** Grolsche contends that American has failed to demonstrate the existence of a contract in 1973 because there is no proof that American had the 1973 letter translated in 1973 or that any of its officers could understand Dutch sufficiently to be able to read the letter without a translation. American does not offer the 1973 letter as the agreement, however, but as written evidence of the agreement. Especially in view of the admitted course of dealing between the parties, proof of American's inability to understand the letter would not disprove the existence of an agreement.

presented that American was to perform the alleged agreement in Connecticut, as the agreement contemplated that Connecticut would be the initial test market for Grolsch beer in this country. It does not appear, however, that Grolsche was to perform any part of its agreement in Connecticut. American relies primarily on its own performance in this state to establish jurisdiction over Grolsche, while Grolsche argues that the "performance" language of § 33–411(c)(1) is satisfied only by performance in this state by the party over whom jurisdiction is sought. The Court, therefore, is faced with deciding whether the language of § 33–411(c)(1) covering contracts "to be performed in this state . . ." is satisfied where the contract requires performance in this state by plaintiff only.

This appears to be a question of first impression. The Connecticut Supreme Court apparently never has addressed any question arising under § 33–411(c)(1). The

section has been discussed in two lower court opinions, but neither of these addressed the issue raised here.[5] The reported federal cases involving this section have not dealt with this issue because they have involved contracts that were to be performed in this state by defendant. *See Schreiber v. Blankfort,* 76 F.R.D. 474, 477–78 (D.Conn.1977); *Scher v. HMH Publishing Co.,* 289 F.Supp. 917, 918 (D.Conn.1968); *Michael Schiavone & Sons, Inc. v. Galland-Henning Mfg. Co.,* 263 F.Supp. 261, 262–63 (D.Conn.1967); *In re Law Research Services, Inc.,* 386 F.Supp. 749, 756 (S.D.N.Y. 1974). This Court, then, must apply the general principles of statutory construction to determine the issue presented.

■■■ The language of § 33–411(c)(1) does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought. Moreover, the available legislative history is sparse and inconclusive.[6] There is no indication, then,

---

5. In *Horn Construction, Inc. v. Stran Steel Corporation,* 26 Conn.Supp. 201, 216 A.2d 833 (C.P.1952), in which § 33–411(c)(1) was claimed as one of a number of bases for jurisdiction, the plaintiff alleged that the defendant, a Michigan corporation, had breached a franchise agreement pursuant to which defendant was obligated to provide plans and materials for the construction of certain buildings in Connecticut. The opinion is unclear as to whether defendant was to perform in Connecticut, and the court's decision that *in personam* jurisdiction existed turned primarily on an analysis under the "minimum contacts" doctrine set forth in *International Shoe, supra. See* Cross, *The Stock Corporation Act—A Review of the First Five Years,* 40 C.B.J. 564, 575 and n.24 (1966).

In *Connecticut Tool & Mfg. Co. v. Bowsteel Distributors, Inc.,* 24 Conn.Supp. 290, 190 A.2d 236 (C.P.1963), the court found that defendant, a New Jersey manufacturing corporation, was "transacting business" in Connecticut within the meaning of Conn.Gen.Stat. § 33–411(b), and so was amenable to suit in Connecticut on plaintiff's claim concerning alleged fraudulent misrepresentation in connection with a contract for the sale of goods. The court also noted that § 33–411(c)(1) would probably provide a basis for jurisdiction in that "[t]he pleadings and facts in the case are such as to permit the possible conclusion that this contract was to be performed by delivery in this state . . ." 24 Conn.Supp. at 302, 190 A.2d at 242. This language does not indicate and the facts of the case do not make clear, however, whether the

performance required under § 33–411(c)(1) is that of defendant or of either party.

6. Section 33–411 was passed as § 129 of the Stock Corporation Act of 1959, 1959 P.A 618. The Act had been drafted by the Commission to study and report on a revision of the Corporation Laws, a commission created by 1957 Special Act 663. Harry L. Nair, a member of the commission speaking at an April 27, 1959 hearing before the General Law Committee, said, apparently in regard to the provision of the Stock Corporation Act that later was codified as the present § 33–411(c)(1):

    I think it goes a little bit too far in some of its provisions . . . . In other words, a provision is made for certain services of process in the case of a corporation and involving a contract which is made in this state or a contract made outside of the state for performance in this state. I have my doubts about the contract made outside the state for performance in the state; If you have actually no activity in the state at all to which that applies . . . .

*Proposed Stock Corporation Act: Hearing on Subs. Sen. Bill 329 Before the General Law Committee,* 1052, April 27, 1959 (Statement of Harry L. Nair). This comment, while not clear enough to support a definitive interpretation either way to the issue now before this Court, is at least an indication that Mr. Nair believed that the provision in question was too liberal. This Court found no other comments on this aspect of the proposed legislation.

**732**

that the Connecticut legislature intended that the language "to be performed in this state" should be given a limited construction to require performance in this state by the party over whom jurisdiction is sought. It would not be appropriate, therefore, for this Court to impose such a limitation upon the statute. *Yu Cong. Eng v. Trinidad,* 271 U.S. 500, 519–24, 46 S.Ct. 619, 70 L.Ed. 1059 (1926). *See generally* 73 Am.Jur.2d *Statutes* § 199 (1974). Furthermore, because § 33–411 apparently was enacted to extend the scope of Connecticut's service of process, *see Nevins v. Revlon,* 23 Conn.Supp. 314, 316, 182 A.2d 634 (C.P.1962), it should be construed liberally in favor of that objective. *Cf. Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939). This Court holds, then, that in this case, where the contract in question clearly contemplated and required performance in this state by plaintiff American, § 33–411(c)(1) subjects defendant Grolsche to suit in this state.[7]

The Court also finds, again construing the evidence in the light most favorable to American, that Grolsche has had sufficient contacts with this forum to satisfy the due process requirements set forth in *International Shoe v. State of Washington, supra.* The "minimum contacts" test is not susceptible to a mechanical application; each case must be evaluated qualitatively on its own merits. *Kulko v. California Supreme Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

The test is not limited to a consideration of Grolsche's performance, if any, under the contract, but may also take into account other contacts with the forum that bear some relationship to the litigation. The exercise of *in personam* jurisdiction does not offend due process if there is sufficient connection between the defendant and the forum to make it fair to require the defendant to defend the action in the forum. *Id.* at 91, 98 S.Ct. 1690.

The evidence, construed in the light most favorable to plaintiff, indicates that in November of 1974, and again in May of 1975, de Groen, as an agent of Grolsche, traveled to this state to engage in business discussions with American and customers of American. He and American agreed at the 1975 meeting to raise American's credit line with Grolsche. It also appears that Grolsche, possibly going beyond its contractual obligation, in an effort to improve its business, made efforts to advertise Grolsche beer in this state, giving American directions on how and where to place ads and transferring funds to American to cover the costs. Under these circumstances, at this preliminary stage of the case, the Court finds that it would not be fundamentally unfair to submit Grolsche to suit in this forum. As noted earlier, defendant will not be foreclosed from challenging jurisdictional facts at trial. The motion to dismiss this count of the complaint is denied.

*SECOND COUNT*

In the second count of the complaint, plaintiffs have attempted to state a claim for fraud against Grolsche. They allege that Grolsche's alleged agreement to give American the exclusive right to import and market Grolsch beer in the United States was a false representation in that Grolsche "on or about June, 1976 willfully . . . refused to ship Grolsch beer products to American Sales and, instead, shipped its beer products to this country through persons . . . other than American Sales . . . . ."

Plaintiffs rely again on § 33–411(c)(1) to establish jurisdiction over Grolsche. A Connecticut court has recognized that an action for fraudulent misrepresentation in the making of a contract is one that arises out of that contract within the meaning of § 33–411(c)(1). *Connecticut Tool & Manufacturing Co. v. Bowsteel Distributors, Inc.,* 24 Conn.Supp. 290, 190 A.2d 236 (C.P.1963). The motion to dismiss this count for lack of *in personam* jurisdiction, therefore, is denied for the reasons stated

---

**7.** The Court is not faced with the question whether § 33–411(c)(1) would be applicable where the contract does not, by its terms, require performance in Connecticut.

with respect to the first count, and the Court will consider whether this count states a claim.

The Connecticut Supreme Court has enunciated the elements of fraud as follows:

> The essential elements of an action in fraud are that a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so act to his injury. [citations omitted] Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation.

*Paiva v. Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69, 71 (1970). Allegations of fraud must be pleaded with particularity. Fed.R.Civ.Pro. 9(b).

■ There is no allegation in this count that at the time it entered into the alleged agreement, Grolsche had a present intent not to fulfill its promise. Absent this essential allegation, this count fails to state a claim for fraud, and is dismissed.

## THIRD COUNT

The third count contains allegations that defendant de Groen intentionally and maliciously interfered with plaintiffs' business by, "among other things, attempting to induce or inducing certain of plaintiffs' employees . . . to leave their employment with plaintiffs, and to take with them secret and confidential material and information . . . ; by attempting to induce or inducing plaintiffs' customers, distributors and franchisees to cease doing business with plaintiffs by telling such customers, distributors and franchisees that American Sales was about to lose its sole and exclusive right to Grolsch beer products . . in the United States . . . . ; and by creating a new company . . . to replace plaintiffs as the sole importers . . in the United States . . . ."

■ Plaintiffs rely exclusively on Conn. Gen.Stat. §§ 52–59b(a)(2) & (3) to establish personal jurisdiction over de Groen. Section 52–59b(a)(2) permits the exercise of personal jurisdiction over a defendant as to any cause of action arising out of a tort committed within the state. Section 52–59b(a)(3) permits the exercise of jurisdiction under certain enumerated circumstances as to any cause of action arising out of a tort committed outside the state that causes injury to person or property within the state. To defeat the present motion to dismiss for lack of personal jurisdiction, the first jurisdictional fact plaintiffs must establish is that, *prima facie*, a tort was committed.

■ De Groen could be held liable for unjustifiably inducing plaintiffs' employees to leave their employ with or without secret information, *Heyman v. Kline*, 344 F.Supp. 1110, 1115 (D.Conn.1970), *rev'd on other grounds* 456 F.2d 123 (2d Cir.), *cert. denied* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972), or for unjustifiably inducing plaintiffs' customers to cease doing business with plaintiffs, *Goldman v. Feinberg*, 130 Conn. 671, 37 A.2d 355 (1944), *see generally*, 45 Am.Jur.2d *Interference* § 50, p. 322 (1969, Sup.1978), whether or not he acted on behalf of his principal. *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975). *See* 3 Am.Jur.2d *Agency* § 300, p. 659 (1962, Supp.1978). And while an agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract, *Boyce v. American Liberty Insurance Co.*, 204 F.Supp. 317, 318 (D.Conn.1962); *see also Kecko Piping Co. v. Monroe*, 172 Conn. 197, 202, 374 A.2d 179 (1977); *Shaw v. Merrick*, 60 A.D.2d 830, 401 N.Y.S.2d 508, 509 (1st Dept. 1978), de Groen could be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain. *See Bradkin v.*

*Leverton,* 32 A.D.2d 1057, 303 N.Y.S.2d 1020, 1021 (2d Dept. 1969).

The only evidence advanced by plaintiffs to establish jurisdiction over de Groen on this count indicates that on several occasions de Groen or his alleged agents attempted to induce Walter J. Rauscher, an employee of Groenlo, to leave Groenlo's employ and "throw in his lot" with Grolsche. Plaintiffs claim that "[d]e Groen's urging of Rauscher . . . to break his employment agreement with Groenlo satisfies the first portion of *C.G.S.* § 52–59b(a)(3) [referring to the commission of a tortious act without the state]." There is no evidence, however, that Rauscher did leave his employment with Groenlo, or that Groenlo or either of the other plaintiffs were damaged in any way by de Groen's "urging" of Rauscher. The tort of interference with another's business is not complete absent some actual damage. *Goldman v. Feinberg, supra* 130 Conn. at 675, 37 A.2d 355. For this reason, attempts to cause employees to leave their employment normally are not actionable. *See* 45 Am.Jur.2d *Interference* § 20, p. 297 (1969, Supp.1978). There also is no evidence that any of plaintiffs' employees conveyed confidential information to defendants. Plaintiffs have failed, then, to establish a *prima facie* case that de Groen committed the tort of interference with their business. And because there is no evidence that de Groen did, in fact, induce Grolsche to breach its contract with American or that he ever acted other than within the scope of his duty as an officer of Grolsche, plaintiffs have failed to establish a *prima facie* case that de Groen committed the tort of interference with the contractual relationship between Grolsche and American. This count, therefore, is dismissed for failure to establish *in personam* jurisdiction over de Groen.

*FOURTH COUNT*

The allegations of the fourth count are substantially similar to those set forth in the third count, the only differences being that this count includes Grolsche as a defendant and includes conclusory allegations that both defendants interfered with the contractual relationships between American and the other plaintiffs. The allegations of this count, however, do not fall fully within the rule that one who unjustifiably causes another to breach a contract with a third party may be liable to that third party, *see Skene v. Carayanis,* 103 Conn. 708, 713, 131 A. 497 (1926), because the allegations do not indicate an effort by either defendant to convince or induce any plaintiff to breach its contract with another plaintiff. If this count does state a claim, then, it must be for unjustifiable interference with plaintiffs' business, *see Goldman v. Feinberg, supra,* the same claim advanced in the third count. Thus, as to defendant de Groen, the fourth count is identical in substance to the third count, and the same reasoning requires that it be dismissed as to him for lack of *in personam* jurisdiction.

Plaintiffs rely on Conn.Gen.Stat. § 33–411(c)(4) to establish *in personam* jurisdiction over Grolsche. That section permits the exercise of jurisdiction over foreign corporations as to any cause of action arising out of tortious conduct in this state. Plaintiffs again rely exclusively on evidence of attempts by de Groen or his alleged agents, as agents of Grolsche, to induce Rauscher to leave his employment with Groenlo. For the same reasons set forth with respect to de Groen in the discussion of the third count, this evidence fails to establish the *prima facie* existence of tortious conduct by Grolsche. The tort of malicious interference with another's business is not complete absent some actual damage. *Goldman v. Feinberg, supra.* No such damage is apparent here. Furthermore, Grolsche could not be held liable in tort for breaching its own contract. *Harris Diamond Co. v. Army Times Publishing Co.,* 280 F.Supp. 273, 276 (S.D.N.Y.1968). This count, therefore, is dismissed for lack of *in personam* jurisdiction.

*SUMMARY*

The motion to dismiss the first count is denied. The second count is dismissed ·for failure to state a claim. The third and

fourth counts are dismissed for lack of *in personam* jurisdiction over either defendant.

The first count purports to allege a claim only against defendant Grolsche and only on behalf of plaintiff American, and so this action is dismissed in its entirety as to plaintiffs Grolsch-Michigan and Groenlo and defendant de Groen.

It is so Ordered.