In re **CONNECTICUT ASBESTOS LITIGATION.**

**C.M.L. No. 10.**

United States District Court,
D. Connecticut.

Oct. 2, 1986.

Frederick B. Tedford, Joyce A. Lagnese, Peter J. Ponziani, Danaher, Tedford, Lagnese & Neal, P.C., Hartford, Conn., for AC & S, Inc., Armstrong World Industries, Carey Canada, Inc., Celotex Corp., Eagle Picker Industries, Flexitallic Gasket Co., Inc., Fireboard Corp., GAF Corp., National Gypsum Co., Owens–Corning Corp., Owens–Illinois, Inc., Pittsburgh Corning Corp., Rock Wool Mfg. Co., Southern Textile Corp., Turner & Newall, P.C., U.S. Gypsum Co.

William R. Murphy, Robert Ciuilla, Carter LaPrade, Tyler, Cooper & Alcorn, New Haven, Conn., for American Hardware & Paint, Uniroyal.

John F. Murphy, Jr., Robinson & Cole, Hartford, Conn., for Atlas Turner, Bell Asbestos Mines, Ltd.

Winnie Zimberland, Howd & Ludorf, Hartford, Conn., for Duro Dyne.

Henry Ide, Tronbridge, Ide & Greenwald, Hartford, Conn., for Empire Ace.

Richard F. Lawler, Michael J. Jones, Whitman & Ranson, Greenwich, Conn., for Garlock.

Edmund T. Curran, Regnier, Taylor, Curran & Langen Bach, Hartford, Conn., for H.B. Smith.

Robert J. Cathcart, Shipman & Goodwin, Hartford, Conn., for Nicolet.

Everett F. Fink, Fink & Highmark, West Hartford, Conn., for Spraycraft.

Bruce Killion, William Turney, Gillooly, McGrail & Carroll, New Haven, Conn., for U.S. Mineral.

Ashcraft & Gerel, Hartford, Conn., for plaintiff.

## RULING ON ATLAS TURNER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

NEVAS, District Judge.

Atlas Turner, Inc. ("Atlas Turner") is one of many defendants in the numerous asbestos product liability actions designated as C.M.L. No. 10. Jurisdiction in these actions is predicated upon diversity of citizenship. 28 U.S.C. Section 1332(a). The plaintiffs seek damages for injuries caused by exposure to products containing asbestos encountered during their employment in various construction trades throughout Connecticut. Atlas Turner is a successor in interest to the Atlas Asbestos Company, the manufacturer of a line of building products containing asbestos.[1] These building products were distributed in Connecticut by A.C. & S., Inc. ("A.C. & S."), an insulation distributor/contractor with offices in Wethersfield and Bridgeport.[2] Atlas Turner is a foreign corporation incorporated under the laws of Canada, with its principal place of business in Montreal.

Like other Canadian corporations named as defendants in cases on this district's C.M.L. docket, Atlas Turner has moved to dismiss, pursuant to Rule 12(b)(2), Fed.R. Civ.P., all actions pending and to be filed in C.M.L. No. 10 in which it is a defendant.[3]

1. Using court filings in other jurisdictions, plaintiffs represent to the court that Atlas Turner is the successor in interest to Atlas Asbestos Company. See Exhibit 2, para. 5, attached to Plaintiffs' Memorandum in Opposition to Atlas Turner's Motion to Dismiss. Plaintiffs also represent that Atlas Asbestos Company was an internal division of Bell Asbestos Mines, Limited, from September 30, 1963, until March 5, 1977. On March 5, 1977, Atlas Asbestos Company became a separate corporate entity operating independently of Bell Asbestos Mines. Id. Exhibit 1 at 2.

2. A.C. & S. is a United States corporation conducting business through offices in many states. See Exhibits 5, 6, and 7, attached to Plaintiffs' Memorandum in Opposition to Atlas Turner's Motion to Dismiss.

3. In February 1986, Atlas Turner filed its original motion to dismiss for lack of personal jurisdiction, with supporting memoranda and affidavit, in each of thirty-two actions designated as C.M.L. No. 10 in which it is a defendant. See, e.g., Schaeffer v. Owens–Corning Fiberglas Corp., H–85–472 (filing no. 9). Plaintiffs opposed the motions filing memoranda in opposition on April 21, 1986, and June 9, 1986. (Filing nos. 31 and 38). On July 21, 1986, Atlas Turner amended its original memoranda and affidavit in support of its motions, correcting substantive inaccuracies. See Amended Memorandum in Support of Defendant Atlas Turner's Motion to Dismiss with attached Amended Affidavit (filing no. 46).

Plaintiffs' counsel, by letter dated August 4, 1986, notified the court of their intention not to file a supplemental response and that they would rest on their two earlier filings.

On August 27, 1986, Atlas Turner refiled the same motion to dismiss and previously amended supporting memorandum and affidavit. (Filing nos. 57 and 58). However, its motion was directed to "all cases filed or to be filed in the future in which [it] has been properly served and in which [its counsel] has filed an appearance with the court." Motion to Dismiss (filing no. 57). This decision is rendered after considering all of Atlas Turner's August 1986, filings.

The basis of the motion is that there is no *in personam* jurisdiction over Atlas Turner. Specifically, Atlas Turner contends that Connecticut's long-arm statute does not confer personal jurisdiction over it and that an exercise of jurisdiction under the long-arm statute would violate constitutional due process. For the following reasons, this motion is denied.

## Discussion

### I.

■ Upon the filing of a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed.R.Civ.P., a plaintiff has the burden of proving personal jurisdiction over a defendant, *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), and must support his allegation of personal jurisdiction with actual proof, *Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 728 (D.Conn. 1979). The motion will be denied where a plaintiff is able to make a *prima facie* showing that the defendant's conduct was sufficient for the court to exercise *in personam* jurisdiction. *Id.* A *prima facie* showing of jurisdiction may be made through affidavits and supporting materials without the need for oral testimony. *See Shaw v. American Cyanamid Co.*, 534 F.Supp. 527, 528 (D.Conn.1982) (Blumenfeld, J.).

### II.

This diversity court's path of inquiry in determining whether there is jurisdiction over a foreign corporation is well marked. The court must look to state law to determine if there is personal jurisdiction over Atlas Turner, a foreign corporation. This involves a two-tiered inquiry as to (1) whether Connecticut's long-arm statute reaches Atlas Turner, and, if so, (2) whether such statutory reach exceeds the "minimum contacts" test required for constitutional due process. *See McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1168 (D.Conn.1973) (Newman, J.).

### A. First Tier of Inquiry—Connecticut's Statutory Requirements For In Personam Jurisdiction Over a Foreign Corporation

The first tier of inquiry is whether a foreign corporation's conduct within a forum state is sufficient to subject it to legal process according to that forum state's long-arm statute. In Connecticut, *in personam* jurisdiction over a foreign corporation cannot be sustained unless the requirements of Connecticut's long-arm statute, codified in Conn.Gen.Stat. Section 33–411, are met. This statute provides, in pertinent part, that

> [Every] foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Subsection (c) of Conn.Gen.Stat. Section 33–411.

In order to assert jurisdiction over a foreign corporation under this subsection (c), the court must find a "nexus between the cause of action alleged and [the] conduct of the defendant within the state as specified in its various clauses." *Fuehrer v. Owen–Corning Fiberglas Corp.*, 673 F.Supp. 1150, 1155 (D.Conn.1986) (Blumenfeld, J.). However, subsection (c) specifically does not require a foreign corporation to have ever transacted business in Connecticut. *Id.*

### B. Second Tier of Inquiry—Constitutional Requirement of "Minimum Contacts"

The second tier of inquiry is whether Connecticut's long-arm statute, once reach-

ing a foreign corporation, exceeds the "minimum contacts" test required for constitutional due process. Under the due process standard a corporation must have minimum contacts with the forum state. *See World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The contacts must be of a nature where "the traditional notions of fair play and substantial justice" are not offended by requiring a party to defend his case in the forum state. *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). As the Supreme Court held in *World–Wide Volkswagen,* personal jurisdiction is appropriate where

> the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567. Hence, a defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

The due process requirement will not be satisfied where there is only a mere likelihood that a product will find its way into the forum state. *Id.* Thus, "only where the record will support a conclusion that the defendant knew its goods would enter the forum state either in the specific instance giving rise to the litigation or on a regular enough basis that it 'has clear notice that it is subject to suit there'" will it be fair to require a defendant to defend itself in a foreign jurisdiction. *Shaw,* 534 F.Supp. at 532, *quoting World–Wide*

*Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

### III.

#### A. *Connecticut's Long–Arm Statute*

■ Plaintiffs in the C.M.L. No. 10 cases are alleged to be residents of Connecticut. The Connecticut long-arm statute provides that a foreign corporation, regardless of whether it transacts business in the state, is subject to suit by a resident of Connecticut. *See* Conn.Gen.Stat. Section 33–411(c). A foreign corporation is subject to legal process in Connecticut where a cause of action arises out of the corporation's production, manufacture, or distribution of goods with the corporation's "reasonable expectation" that the goods will be used in the state. *See* Conn.Gen.Stat. Section 33–411(c)(3).

It is beyond question in this jurisdiction that the mere fact that goods are produced and sold outside this jurisdiction does not defeat jurisdiction under the long-arm statute. This court recently found that it had personal jurisdiction over a Canadian corporation which mined asbestos, holding that the foreign corporation should have reasonably expected that its asbestos ore would be used in Connecticut and that it would be haled into court here if its ore caused an injury here. *See Hover v. Asbestos Corp., Ltd.,* 678 F.Supp. 370, 373–74 (D.Conn. 1986), *relying on Bull v. Asbestos Corp., Ltd.,* No. H–82–463, slip op. at 7 (D.Conn. May 25, 1984) [Available on WESTLAW, 1984 WL 7957] (Blumenfeld, J.). Similar reasoning now applies in the instant case to a defendant foreign corporation which manufactured, rather than mined, asbestos products with the reasonable expectation that its products would be used in Connecticut.

The plaintiffs' exhibits, which are attached to their memoranda, clearly demonstrate that Atlas Turner had a reasonable expectation that its goods would be used in Connecticut. Exhibits 4A to 4C are plaintiffs' affidavits with supporting documentation attesting that they used Atlas products in various construction jobs in Connecticut throughout their years of employment. Exhibit 4D contains the deposition transcript of a plaintiff specifying that Atlas asbestos products were used as insula-

tion in the construction of Millstone I, II, and III powerplants. A few of the accompanying documents are copies of Atlas's legend which includes the words "Made in Canada." Exhibits 9A to 9E, which are composed of invoices from the Atlas Asbestos Company to A.C. & S., an asbestos product distributor, show that Atlas's asbestos products such as "Newtherm" were shipped to the offices of A.C. & S. in Wethersfield, Connecticut. The invoices include A.C. & S.'s Connecticut address. Exhibits 9F to 9R are also Atlas Asbestos Company invoices listing A.C. & S. as the company invoiced. However, these invoices indicate that Atlas's asbestos products were not shipped to A.C. & S., rather the products were apparently shipped *directly* to worksites in Connecticut. These unrebutted documents sufficiently establish that Atlas Turner should have known with near certainty that its products were being used in Connecticut.

Atlas Turner has submitted an affidavit by Alain Dulude, Legal Counsel of Atlas Turner, attesting that it "has not and does not conduct business in the State of Connecticut." Amended Dulude affidavit, para. 7. The remaining facts attested to in Dulude's amended affidavit concerning Atlas Turner's absence of contact with Connecticut are not disputed. These facts are as follows. All orders for sales of Atlas products were handled exclusively in the Atlas offices in Montreal. Its shipments were "F.O.B. Montreal." Atlas Turner has never registered with the Connecticut Secretary of State as a foreign corporation; it has no agents, employees, or offices in Connecticut; it has no accounts or real or personal property in Connecticut; it has neither received mail nor maintained telephones in Connecticut; it has never been a party to a law suit in Connecticut for recovery of accounts receivable or owing; and it has no warehouse space, storage facilities, or offices in Connecticut. *See* Amended Affidavit, paras. 3–6, 8–9.

The fact that Atlas Turner manufactured its asbestos products in Canada and shipped them F.O.B. Montreal does not insulate Atlas Turner from being subject to personal jurisdiction in this state under Connecticut's long-arm statute. The assertion that Atlas Turner always shipped its products F.O.B. Montreal is immaterial in determining whether there is personal jurisdiction over it. The legislative purpose behind Section 33–411(c)(3) "was to confer jurisdiction in products liability suits over manufacturers who did not themselves ship their products to Connecticut." *Bull*, slip op. at 4, *citing Buckley v. New York Post Corp.*, 373 F.2d 175, 177–78 (2d Cir.1967). Language in the long-arm statute specifically provides for jurisdiction over a foreign corporation manufacturing goods used in Connecticut "regardless of ... where the goods were ... manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers." Conn.Gen.Stat. Section 33–411(c)(3).

■ Atlas Turner asserts that section 33–411(c) is inapplicable to the actions against it because subsection (c) "is concerned with disputes between business parties, and seeks to enable a Connecticut business to sue a foreign business over disputes 'arising out of' their business contracts or relationships." Atlas Turner's Amended Memorandum at 6. That interpretation is plainly contrary to the case law and language of the long-arm statute. The statute provides that "[e]very foreign corporation shall be subject to suit in this state [ ] by a *resident* of this state" in a cause of action arising out of any one of the activities enumerated in subparts (c)(1) to (4). *See* Conn.Gen.Stat. Section 33–411(c) (emphasis added). Subsection (c) of the long-arm statute is frequently used to require a foreign corporation to defend itself in Connecticut after a dispute arises over a business relationship between it and a Connecticut resident. *See, e.g., Bowman*, 474 F.Supp. at 732 (personal jurisdiction over foreign corporation where contract was to be performed in Connecticut is satisfied under Conn.Gen.Stat. Section 33–411(c)(1)); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 555–56 (D.Conn.1968) (same).

Yet a foreign corporation may be required to defend itself in Connecticut against a suit brought by a Connecticut

resident where the cause of action arises out of a non-business relationship such as an injury caused by a product manufactured by an out-of-state manufacturer. *See, e.g., Shaw,* 534 F.Supp. at 531–32 (although plaintiff in a products liability action failed to establish *prima facie* conduct by defendant foreign corporation to permit the exercise of *in personam* jurisdiction over defendant, jurisdiction would have existed on an adequate showing that the cause of action arose out of defendant's Connecticut-related activity); *Simeone v. Federal Press Co.,* 40 Conn. Sup. 173, 178–79, 485 A.2d 587, 589 (Super.Ct.1984) (defendant, an Indiana manufacturer of presses who occasionally shipped presses, which were first sold by an intermediate company, to a Connecticut company knowing that the pre-sold presses were destined for Connecticut, engaged in sufficient conduct necessary to support the statutory reach of section 33–411(c)(3) and to satisfy *World–Wide Volkswagen*'s minimum contacts test in a products liability action arising out of an injury sustained in operating a press manufactured by defendant).

Atlas Turner also argues unpersuasively that subpart (3) of the long-arm statute is inapplicable here because these causes of actions "do not arise out of, or relate to the acts of production, manufacture or distribution of defendant's products." Atlas Turner's Amended Memorandum at 7. Atlas Turner again misreads the plain language of the long-arm statute. Subpart (c)(3) of section 33–411(c) permissibly extends jurisdiction over a foreign corporation where a cause of action arises out of the corporation's Connecticut-related activity of making or distributing goods to be used or consumed in Connecticut. In this case, the plaintiffs' product liability claims arise from exposure to asbestos products which Atlas Turner manufactured and then sold with the knowledge that its goods were destined for use in Connecticut.

As authority for the inapplicability of subpart (3) to these actions, Atlas Turner cites, without explanation, *DiMeo v. Minster Machine Co., Inc.,* 225 F.Supp. 569 (D.Conn.1963). A brief explanation of *DiMeo* will show that the case is factually

distinguishable from these actions here. The defendant in *DiMeo,* a Michigan manufacturer of valves, sold a valve to another Michigan company who installed that valve in a press at its Ohio plant. The press was later sold to a Connecticut company. In dismissing the action, the court held that the defendant valve manufacturer did not reasonably expect that its one valve would be used in Connecticut and that the presence of the valve in Connecticut did not constitute sufficient minimum contacts with the state. *Id.* at 571–72.

Unlike Atlas Turner, the Michigan valve manufacturer in *DiMeo,* who sold the valve to another Michigan company, had no reasonable expectation that its valve would enter Connecticut. Atlas Turner not only sold its asbestos products for delivery to the Connecticut office of A.C. & S., a distributor of its products, it sold its product for direct delivery to worksites in Connecticut. Atlas Turner should have reasonably expected that its asbestos products would be used by workers, such as plaintiffs, in Connecticut.

In view of Atlas Turner's contacts with the Wethersfield office of A.C. & S. and with worksites in Connecticut at which workers were allegedly exposed to the asbestos products manufactured by Atlas Turner, plaintiffs have made a *prima facie* showing that Connecticut's long-arm statute reaches Atlas Turner.

### B. *Constitutional Due Process*

■ The constitutional requirements of "minimum contacts" have been satisfied in this case, rendering Atlas Turner's constitutional argument unavailing. As discussed, plaintiffs have adequately demonstrated that Atlas Turner should have reasonably anticipated that it would be haled into a Connecticut court if its asbestos products, which were knowingly sent to Connecticut, caused injury here. *See World–Wide Volkswagon,* 444 U.S. at 297, 100 S.Ct. at 567.

The meticulously prepared affidavit presented in support of Atlas Turner's motion to dismiss fails to address whether

**76**

Atlas Turner expected its goods to be used in Connecticut. The substantially documented pattern of transactions of Atlas Turner selling its asbestos products to a Connecticut distributor for delivery either to the distributor or directly to worksites in Connecticut precludes any justifiable assertion that Atlas Turner lacks sufficient relations, ties, or contacts with Connecticut, the forum state. Atlas Turner knew there was more than a mere likelihood that its products would enter Connecticut; it knew its products were entering Connecticut and were being used on Connecticut construction sites.

Therefore, the application of Connecticut's long-arm statute to reach Atlas Turner does not exceed the minimum contacts test required for constitutional due process.

### Conclusion

Accordingly, in view of the fact that Atlas Turner, a foreign corporation, knew with reasonable certainty that asbestos products it manufactured in Canada were destined for use in Connecticut and should have reasonably expected that it would be haled into a Connecticut court if its products caused injury here, Atlas Turner's Connecticut-related activity is sufficient to support the statutory reach of Connecticut's long-arm statute and to satisfy the constitutional requirement of minimum contacts with Connecticut. Therefore, defendant Atlas Turner's motion to dismiss for lack of personal jurisdiction is denied.

Finally, this ruling shall apply to all cases within the designation C.M.L. Numbers 3 through 11 in which Atlas Turner is a named defendant *unless* Atlas Turner can present material facts critical to the determination of personal jurisdiction that were not presented to the court when it decided this motion.